APPEAL NO. 13-15134

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

Melissa J. Earll,                          |    5:11-cv-262-EJD

          Plaintiff-Appellant          |

v.                                         |

eBay Inc.                                  |

          Defendant-Appellee.           |

_____

On Appeal from the United States District Court
for the Northern District of California
The Honorable Edward J. Davila, Presiding

_____

**BRIEF OF APPELLANT**

_____

Michael J. Aschenbrener
ASCHENRENER LAW, P.C.
795 Folsom St, First Floor
San Francisco, CA 94107
Telephone: 415-813-6245
Facsimile: 415-813-6246
mja@aschenbrenerlaw.com
Attorney for Appellant Melissa J. Earll

## TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ................................................................. 1

ISSUES PRESENTED ................................................................................. 1

STATEMENT OF THE CASE ..................................................................... 2

STATEMENT OF FACTS ........................................................................... 4

SUMMARY OF ARGUMENT ..................................................................... 5

ARGUMENT ............................................................................................... 8

I.     THE DISTRICT COURT ERRED IN HOLDING THAT TITLE III OF
       THE ADA DOES NOT APPLY TO EBAY. ..................................... 8

       A.     The plain language of Title III of the ADA indicates that eBay
              falls within the enumerated categories of "public places of
              accommodation." .................................................................. 8

       B.     The legislative history of the ADA reveals that Title III should
              apply to websites. ................................................................ 10

       C.     The Department of Justice, which enforces the ADA, expressly
              states that Title III applies to websites like eBay.com. ................. 13

       D.     The Ninth Circuit's current precedent does not hold that the ADA
              excludes web-only businesses. ......................................... 15

              1.     Weyer v. Twentieth Century Fox Film Corp. *does not
                     address whether Title III of the ADA applies to the Internet.*15

              2.     *eBay's existence as an online-only store necessarily proves
                     that having physical locations is not the appropriate
                     connecting characteristic among the items enumerated in
                     Title III.* .................................................................. 19

       E.     Other circuits have held that the ADA applies to websites. ......... 20

       F.     Applying Title III of the ADA to websites would further the
              purpose of the ADA ........................................................... 22

i

II.   **THE DPA IS A FREESTANDING STATUTE.** .......................................... 24

    A.   **If this Court finds the ADA applies to eBay, then eBay is also automatically liable for violating the DPA.** ...................................... 24

    B.   **Even if the Court finds against Earll on her ADA claim, Earll still sufficiently alleged that eBay violated the DPA.** ........................... 25

    C.   **If this Court rules that the DPA is not a freestanding statute, Earll should be able to rely on her Unruh Act claim to support her DPA claim.** ............................................................................................... 31

III.  **EARLL SUFFICIENTLY ALLEGES EBAY VIOLATED THE UNRUH ACT.** ......................................................................................................... 32

    A.   **If this Court finds the ADA applies to eBay, then eBay is also automatically liable for violating the Unruh Act.** ......................... 32

    B.   **Case law concerning whether intent is a required element of an independent Unruh Act claim is not clear, though it strongly suggests that intent is not required.** .................................................. 32

    C.   **Earll sufficiently alleges eBay acted intentionally.** ............................ 36

        1.   *Earll's factual allegations exceed the plausibility standard.*. 36

        2.   *The cases on which the district court relied are distinguishable from the instant case.* .................................... 44

**CONCLUSION** ...................................................................................................... 47

**CERTIFICATE OF COMPLIANCE** ................................................................ 49

# TABLE OF AUTHORITIES

## CASES

*Access Now, Inc. v. Southwest Airlines, Co.*, 227 F. Supp. 2d 1312 (S.D. Fla. 2002) .................................................................................................. 20

*Aguayo v. U.S. Bank*, 653 F.3d 912 (9th Cir. 2011) ............................................. 24

*Ali v. Fed. Bureau of Prisons*, 552 U.S. 214 (2008) ............................................. 18

*Anderson v. Gus Mayer Boston Store of Delaware*, 924 F. Supp. 763 (E.D. Tex. 1996) ..................................................................................................... 23

*Angelucci v. Century Supper Club*, 41 Cal. 4th 160 (2007) ................................... 35

*Arizona ex rel. Goddard v. Harkins Amusement Enters. Inc.*, 603 F.3d 666 (9th Cir.) ........................................................................................................ 14, 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................ 24, 37, 41

*Batjac Productions Inc. v. GoodTimes Home Video Corp.*, 160 F.3d 1223 (9th Cir. 1998) ..................................................................................................... 17

*Bay Area Addiction Research and Treatment, Inc. v. City of Antioch*, 179 F.3d 725 (9th Cir. 1999) ............................................................................................. 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................. 24, 37

*Carparts Distribution Center v. Automotive Wholesaler's Association of New England*, 37 F.3d 12 (1st Cir. 1994) ......................................................... 20

*Chabner v. Omaha Life Ins. Co.*, 225 F.3d 1042 (9th Cir. 2000) ............................. 8

*Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984) ............... 14

*Connecticut Nat. Bank v. Germain*, 503 U.S. 249 (1992) .............................. 8, 9, 26

*Corley v. United States*, 556 U.S. 303 (2009) ....................................................... 27

*Davis v. Patel*, No. 11-55908 (9th Cir. Feb. 5, 2013) ............................................. 34

*Doe v. Mutual of Omaha Insurance Co.*, 179 F.3d 557, 559 (7th Cir. 1999) ......... 21

*Elder v. Nat'l Conference of Bar Examiners*, No. 11-cv-199-SI, at *6 (N.D. Cal. Feb. 16, 2011) ................................................................................. 45

*Exp. Group v. Reef Indus., Inc.*, 54 F.3d 1466, 1473 (9th Cir. 1995) ...................... 8

*Franklin Mint Co. v. Manatt*, 184 Cal. App. 4th 313, 363 (Cal. App. 2010) ......... 44

*K.M. v. Tustin Unified Sch. Dist.*, No. 10-cv-1011-DOC (C.D. Cal. July 5, 2011), *appeal filed* (9th Cir. July 26, 2011), No. 11-56259 ................................................. 35

*Katz v. United States*, 389 U.S. 347 (1967) ........................................................... 13

*Koebke v. Bernardo Heights Country Club*, 36 Cal. 4th 824 (2005) ...................... 44

*Kotev v. First Colony Life Ins. Co.*, 927 F. Supp. 1316 (C.D. Cal. 1996) ........ 22, 23

*Lerma v. NTT McKee Retail Ctr. LLC*, No. 5:11-cv-2161-LHK (N.D. Cal. Oct. 18, 2011) ...................................................................................................................... 34

*Morgan v. Joint Administration Board et al.*, 268 F.3d 456, 459 (7th Cir. 2001).. 21

*Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009) ................. 37, 40, 41, 42

*Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 208 P.3d 623 (Cal. 2009)............. 33, 35

*Munson v. Del Taco, Inc.*, 522 F.3d 997 (9th Cir. 2008).................................. 32, 33

*Nat'l Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) ...... 20

*Nat'l Fed. of the Blind v. Target Corp.*, 452 F. Supp. 2d 946 (N.D. Cal. 2006) .... 16

*Nat'l Fed. of the Blind v. Target Corp.*, 582 F. Supp. 2d 1185 (N.D. Cal. 2007) . 29, 34

*Olmstead v. United States*, 277 U.S. 438 (1928) .................................................... 13

*Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28 (2d Cir. 1999)................................ 21

*Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206 (1998) ...................... 12

*Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116 (9th Cir. 2007) ...... 24

*Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314 (9th Cir. 1980) .............. 35

*U.S. v. American Trucking Ass'ns*, 310 U.S. 534 (1940) ....................................... 10

*Urhausen v. Longs Drug Stores Cal., Inc.*, 155 Cal. App. 4th 254 (2007) ........... 29

*Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104 (9th Cir. 2000). 15, 16, 17, 18

*Wilson v. Haria and Gogri Corp.*, 479 F. Supp. 2d 1127 (E.D. Cal. 2007) ........... 35

*Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110 (N.D. Cal. 2011) ................... 44, 45

## STATUTES

28 U.S.C. § 1291 ................................................................................................ 1

42 U.S.C. § 12181(7) ......................................................................................... 8

Cal Civ. Code § 51(f) ........................................................................................ 32

Cal Civ. Code §§ 54(c) & 54.1(d) ..................................................................... 24

Cal. Civ. Code § 51 ............................................................................................ 2

Cal. Civ. Code § 54.1(a)(1) .......................................................................... 25, 27

Cal. Civ. Code § 54.1(a)(3) .......................................................................... 26, 28

## OTHER AUTHORITIES

136 Cong. Rec. H2633 (daily ed. May 22, 1990) (statement of Rep. Schroeder).. 11

28 C.F.R. pt. 36, App. A, at 816 (2011) ........................................................ 11, 15

28 C.F.R. pt. 36.303(c)(2)-(3) and (d) ................................................................ 43

Advance Notice of Proposed Rulemaking on Accessibility of Web Information and Services Provided by Entities Covered by the ADA, 28 CFR Parts 35 and 36, (July 26, 2010) ....................................................................................................... 22, 23

Advanced Notice of Proposed Rulemaking ("ANPRM") on Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations. 75 Fed Reg. 43460, 43464 ....................................................... 15

Brief of the United States as Amicus Curiae in Support of Appellant, (No. 99-50891), 1999 WL 33806215, available at http://www.justice.gov/crt/about/app/briefs/hooks.pdf .......................................... 15

H.R. Rep. No. 485, 101st Cong., 2d Sess., pt. 2, at 99 (1990) ........................ 22, 23

H.R. Rep. No. 485, pt. 2, at 108 (1990) .................................................................. 12

H.R. Rep. No. 485, pt. 3, at 54 (1990) .................................................................... 10

Letter from Deval L. Patrick, Assistant Attorney General, Civil Rights Division, Department of Justice, to Tom Harkin, U.S. Senator (Sept. 9, 1996), available at http://www.justice.gov/crt/foia/readingroom/frequent_requests/ada_tal/tal712.txt 15

S. Rep. No. 116, at 59 (1989) ................................................................................. 11

*Target*, Case. No. 06-cv-1802-MHP, Dkt. 13, First Amended Complaint, ¶¶ 46-53 ....................................................................................................................... 30

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the case concerns a federal question, specifically, the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12182. The District Court also had supplemental jurisdiction over Plaintiff-Appellant Earll's state law claims.

This Court has appellate jurisdiction over the district court's judgment and orders granting eBay's motions to dismiss and Earll's motion for leave to file an Amended Complaint. 28 U.S.C. § 1291.

## ISSUES PRESENTED

1.      Whether Defendant-Appellee eBay Inc., as an Internet-only business, qualifies as a place of public accommodation under Title III of the ADA.

2.      Whether the district court erred in concluding that the ADA cannot afford Plaintiff-Appellant Earll a remedy.

3.      Whether the district court erred in concluding that the California Disabled Persons Act (the "DPA"), Cal. Civ. Code §§ 54, is not a freestanding statute.

4.      Whether the district court erred in concluding that Plaintiff-Appellant Earll failed to sufficiently plead that Defendant-Appellee eBay Inc. violated the DPA.

1

5.      Whether the district court erred in concluding that intent is a required element of an ADA-independent claim under the California Unruh Civil Rights Act (the "Unruh Act"), Cal. Civ. Code §§ 51 *et seq.*

6.      Whether the district court erred in concluding that Plaintiff-Appellant Earll failed to sufficiently plead intent in support of her Unruh Act claim.

## STATEMENT OF THE CASE

Plaintiff-Appellant Melissa Earll ("Earll") alleges that Defendant-Appellee eBay Inc. ("eBay") violated: (1) the ADA, 42 U.S.C. § 12182; (2) the DPA, Cal. Civ. Code § 54; and, (3) the Unruh Act, Cal. Civ. Code § 51.

On March 16, 2010, Earll filed her original Class Action Complaint as Case No. 6:10-cv-3089-JCE in the U.S. District Court for the Western District of Missouri. eBay filed motions to dismiss and to transfer venue. The court granted eBay's motion to transfer venue to the U.S. District Court for the Northern District of California and denied eBay's motion to dismiss as moot.

Upon transfer to the Northern District of California, the case was initially assigned to Judge Jeremy Fogel. On April 13, 2011, Earll filed a motion for leave to file her first amended complaint. On September 7, 2011, after full briefing and oral argument, Judge Fogel denied Earll's motion without prejudice, but granted Earll leave to file an amended complaint consistent with His Honor's order, which ruled that: (a) the ADA cannot afford Earll a remedy because places of public

accommodation under the ADA are limited to physical spaces, and eBay is not a physical space; (b) the DPA is not a freestanding statute and requires pleading of a California state law separate from the DPA that prescribes higher accessibility standards than the ADA in order to state an ADA-independent DPA claim; and (c) the Unruh Act requires pleading of intentional discrimination in order to maintain an ADA-independent Unruh Act claim.

On September 27, 2011, the case was reassigned to Judge Edward J. Davila.

On October 5, 2011, Earll filed her First Amended Complaint ("FAC"). In her FAC, Earll alleges eBay violated the ADA, the DPA, and the Unruh Act. eBay then moved to dismiss the FAC under Federal Rule 12(b)(6). On August 8, 2012, Judge Davila granted eBay's motion to dismiss the ADA and DPA claims without leave to amend, and the Unruh Act claim with leave to amend.

On September 6, 2012, Earll filed her Second Amended Complaint ("SAC"). Also on September 6, 2012, Earll filed a motion to reconsider Judge Fogel's order denying Earll leave to file her first amended complaint. On September 20, 2012, Judge Davila denied Earll's motion for reconsideration. eBay then moved to dismiss Earll's SAC. On December 20, 2012, Judge Davila granted eBay's motion to dismiss the SAC with prejudice and entered judgment for eBay. On January 18, 2013, Earll filed her notice of appeal to this Court.

## STATEMENT OF FACTS

eBay, which is based in San Jose, California, is the self-described "largest online marketplace" in the world, with 94 million registered users buying and selling $62 billion worth of goods annually. Excerpts of Record ("ER") 50. In 2010, eBay reported revenue of $9.2 billion and income of $1.8 billion. ER 51. In order to use eBay, individuals must register with eBay. ER 50. The online registration process for sellers includes a step where the prospective seller must provide a phone number to eBay via the Internet. ER 50. eBay then places an automated call to the prospective seller during which a PIN code is spoken to the prospective seller. ER 50. The would-be seller then enters that PIN code online to complete the registration process. ER 50. For Earll and the 11 million other deaf or hard of hearing persons in the United States, completing this step is impossible due to their disabilities. ER 50-51. Alternatives to the phone-based verification system that would allow deaf individuals equal access to the services eBay provides are readily available, but eBay has affirmatively chosen to use its current system and refuses to make accommodations for the deaf. ER 55-56.

Earll is profoundly deaf. ER 53. Earll attempted to register as an eBay seller so that she could sell personal items via eBay.com. ER 54. Earll first attempted to use eBay's selling services on June 23, 2008. ER 54. For over six weeks, Earll repeatedly told eBay, via live chat and email, that she was deaf and that eBay's

identity verification procedures prevented her from registering as a seller. ER 28.

Earll further offered to verify her identity via alternate means, but eBay refused.

ER 28. Despite acknowledging Earll's disability, eBay told Earll that she could

only register as a seller by using the telephone. ER 27-28. Earll even tried to

register again nearly a year-and-a-half later in November 2009, but met the same

result. ER 28. Earll alleges eBay's conduct violates the ADA, DPA and Unruh Act.

## SUMMARY OF ARGUMENT

The ADA must apply to eBay; any other result frustrates the letter and spirit

of the ADA. To rule otherwise would require this Court—which is located in close

geographic proximity to the headquarters of Google, Facebook, Netflix, and

countless other Internet-only businesses—to conclude that the Internet, in 2013, is

not an important part of the social and economic mainstream in America. Such a

conclusion is patently absurd.

By its own language, websites that affect commerce are places of public

accommodation. The ADA does not say otherwise, and this Court must adhere to

the rule that statutes say what they mean and mean what they say. If Congress

wanted the ADA to apply only to physical places, then it would say so explicitly.

Moreover, the legislative history of the ADA demonstrates that Congress intended

for the law to be construed broadly. In addition, the Department of Justice has

stated many times that the ADA applies to websites, including in the official

5

commentary to the ADA's implementing regulation, as have the First and Seventh Circuits.

Furthermore, the case on which the district court relied in concluding the ADA does not apply to websites does not even mention websites. In fact, *Weyer v. Twentieth Century Fox Film Corp.* is case about insurance contracts, not the Internet. Not only that, but the language relied upon in *Weyer* is dicta that remains unnecessary to its holding. Thus, this Court can rule that the ADA applies to websites without disrupting any existing precedent, including *Weyer*. Consequently, Earll respectfully asks this Court to reverse the district court and hold that eBay is a place of public accommodation under the ADA.

Earll also alleges eBay's conduct violates the California Disabled Persons Act. The DPA unequivocally applies to eBay—even the district court agrees with this much. Yet, the district court ruled that Earll must also allege that eBay's conduct violates some other California law for the DPA to apply. First, the specific provision of the DPA relied on for the district court's erroneous holding does not even apply to this case. Section 54.1(a)(3) concerns only disability issues relating to transportation. Second, § 54.1(a)(3), assuming *arguendo* that it does apply to this case, does not even say that Earll must point to "separate" laws in order to maintain a DPA cause of action. So ultimately, the district court (1) misapplied (2) the wrong section of the law. Accordingly, Earll respectfully asks this Court to rule

that she sufficiently pled both ADA-dependent and ADA-independent causes of action under the DPA.

The district court also ruled that Earll's Unruh Act claim fails to state a claim upon which relief can be granted because she did not sufficiently plead that eBay acted intentionally. First, the Unruh Act likely does not require allegations of intent. Second, Earll sufficiently pleaded factual allegations that plausibly allowed the district court to infer that eBay acted intentionally. But the district court applied the wrong pleading standard to Earll's allegations, holding that she failed to "firmly connect" eBay's conduct to an intent to discriminate. The correct standard requires a reasonable inference, not a firm connection. Whether because the Unruh Act does not actually require allegations of intent or because Earll sufficiently pled intent, Earll asks that this Court overturn the district court's ruling that she failed to sufficiently plead an Unruh Act violation.

In the end, the district court ruled that none of three separate laws—all of which were designed to prevent discrimination and two of which were designed expressly and exclusively to protect disabled persons like Earll—actually protect her. According to the district court, Earll lacks the same right to use the Internet as non-disabled persons. Fortunately, this Court has the opportunity to right that wrong, and recognize that disabled persons have just as much right to use the Internet as everyone else.

## ARGUMENT

## I.    THE DISTRICT COURT ERRED IN HOLDING THAT TITLE III OF THE ADA DOES NOT APPLY TO EBAY.

"The district court's interpretation of the ADA is a question of law that we review de novo." *Chabner v. Omaha Life Ins. Co.*, 225 F.3d 1042, 1046-47 (9th Cir. 2000) (citing *Bay Area Addiction Research and Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 730 (9th Cir. 1999)).

### A.    The plain language of Title III of the ADA indicates that eBay falls within the enumerated categories of "public places of accommodation."

In construing a statute in which there are various possible interpretations, a court is to "begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Exp. Group v. Reef Indus., Inc*., 54 F.3d 1466, 1473 (9th Cir. 1995). "[A] court should always turn first to one cardinal canon before all others . . . that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

Title III enumerates twelve categories of commerce-affecting private entities that are considered places of public accommodation. 42 U.S.C. § 12181(7). Earll alleges that eBay is a place of public accommodation because eBay.com is a "place

of public gathering" under § 12181(7)(D) and because it is a "sales or rental establishment" such as a "clothing store, hardware store, [or] shopping center" under § 12181(7)(E). ER 10-11, 32, 59. After all, as Earll alleges, "eBay is the world's largest marketplace, where practically anyone can buy and sell practically anything." ER 10, 32, 59.

While Title III, which was enacted in 1990—before the World Wide Web was released—does not expressly include web-only businesses, it also does not expressly exclude them. For example, it does not say "clothing store, hardware store, [or] shopping center unless such stores are online only." If Congress had meant to say that these enumerated categories consist only of physical locations or require a nexus to physical places, then the ADA would say so. *See Connecticut Nat. Bank*, 503 U.S. at 253-54. But it does not say that. So this Court would violate the "one cardinal canon . . . that a legislature says in a statute what it means and means in a statute what it says" if it decides that Title III excludes web businesses or that it requires some nexus to physical structures. *Id*. The statute simply does not say that it excludes websites or requires websites to have nexuses to physical structures, so this Court should not add such exclusions or requirements to the ADA.

Accordingly, it is not necessary to look beyond the plain language of the statute to determine that it applies to eBay.

**B.**      **The legislative history of the ADA reveals that Title III should apply to websites.**

The Court need not look past the plain language of Title III to determine that it applies to eBay, but should the Court peel back the curtain, it will find that Congress expressly intended for the ADA to apply broadly. A court "is to construe the language so as to give effect to the intent of Congress." *U.S. v. American Trucking Ass'ns*, 310 U.S. 534, 542 (1940). Courts should start with the plain meaning of the statute, but when the plain meaning of a statute leads to "absurd or futile results," the court may look beyond words to the purpose of the act. *Id*. at 543.

Here, interpreting Title III so as to exclude websites or require a nexus to physical structures would lead to absurd or futile results because the ADA would then fail to protect disabled Americans from participating in a critical part of society. Thus, before coming to such a conclusion, the Court may look to the legislative intent of the ADA.

> A person alleging discrimination does not have to prove that the entity being charged with discrimination is similar to the examples listed in the definition. Rather, the person must show that the entity falls within the overall category. For example, it is not necessary to show that a jewelry store is like a clothing store. It is sufficient that the jewelry store sells items to the public.

H.R. Rep. No. 485, pt. 3, at 54 (1990). Here, eBay sells all kinds of items to the

public (including clothing and jewelry), which is all that should matter. It is not necessary for Earll to show that eBay is like a clothing store, though she has done that. It is sufficient that eBay sells items to the public. The Senate report evidences similar guidance for broadly construing the categories of public accommodations.

> within each of these categories, the legislation only lists a few examples and then, in most cases, adds the phrase "other similar" entities. The Committee intends that the "other similar" terminology should be construed liberally consistent with the intent of the legislation that people with disabilities should have equal access to the array of establishments that are available to others who do not currently have disabilities.

S. Rep. No. 116, at 59 (1989).

"It is very important that the definitions in the ADA not be narrowed to exclude facilities which are crucial to carrying out one's life." 136 Cong. Rec. H2633 (daily ed. May 22, 1990) (statement of Rep. Schroeder). And according to the official commentary to the ADA's implementing regulation, the Internet is indeed crucial to carrying out one's life. 28 C.F.R. pt. 36, App. A, at 816 (2011) ("The Department agrees that the ability to access the goods and services offered on the Internet through the Web sites of public accommodations is of great importance to individuals with disabilities[.]").

Additionally, Congress intended for the ADA to cover new and later-developed technologies. The House Committee on Education and Labor stated that it intended "that the types of accommodation and services provided to individuals

with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times[,]" and that technological advances "may require public accommodations to provide auxiliary aids and services in the future which today would not be required because they would be held to impose undue burdens on such entities." H.R. Rep. No. 485, pt. 2, at 108 (1990). eBay and the web did not exist in 1990, but they do now and the ADA was designed to keep pace with these and other changing technologies.

U.S. Supreme Court precedent also supports the position that the ADA shall not be limited to what Congress contemplated at the time of enactment. In *Pennsylvania Dep't of Corrections v. Yeskey*, the Supreme Court reiterated, "the fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." 524 U.S. 206, 211 (1998) (finding that Title II of the ADA applies to state prison inmates even though prisons are not expressly mentioned in the ADA) (citations and internal punctuation marks omitted). The same is true in this case. The fact that Title III does not expressly contemplate websites (which did not even exist in 1990) does not demonstrate ambiguity, it demonstrates breadth.

Similarly, the Supreme Court initially would not apply the Fourth Amendment's protection of the "right of the people to be secure in their persons, houses, papers, and effects" to electronic documents because the actual text of the

12

Amendment could not be extended to include telephone wires. *Olmstead v. United States*, 277 U.S. 438, 464-465 (1928). The Court eventually rejected this interpretation and acknowledged the necessity of avoiding restrictive interpretations that exclude new technologies from the protection of pre-existing law: "[t]o read the Constitution more narrowly is to ignore the vital role that the public telephone has come to play in private communication . . . once it is recognized that the Fourth Amendment protects people - and not simply "areas" - against unreasonable searches and seizures it becomes clear that the reach of that Amendment cannot turn upon the presence or absence of a physical intrusion." *Katz v. United States*, 389 U.S. 347, 352-53 (1967).

Like the telephone before it, the Internet now plays a "vital role" in the lives of Americans, both disabled and non-disabled. And like the Fourth Amendment, the ADA protects people and not physical places; thus, "the reach of the [ADA] cannot turn upon the presence or absence of a physical [structure]." *Id*.

Accordingly, giving effect to the intent of Congress requires this Court to interpret Title III to include websites as places of public accommodations.

## C. The Department of Justice, which enforces the ADA, expressly states that Title III applies to websites like eBay.com.

The Department of Justice ("DOJ") cannot make its position any clearer that websites are places of public accommodation and subject to Title III of the ADA.

13

Furthermore, the DOJ's official commentary in the Code of Federal Regulations is subject to *Chevron* deference. *See Arizona ex rel. Goddard v. Harkins Amusement Enters. Inc.*, 603 F.3d 666, 674 (9th Cir.); *Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984).

The DOJ's commentary to title 28, part 36 in the Code of Federal Regulations references the exact scenario present in this case: applying Title III to web-only businesses:

> Commenters urged the Department to require specifically that entities that provide goods or services on the Internet make their Web sites accessible, regardless of whether or not these entities also have a ''bricks and mortar'' location. The commenters explained that such clarification was needed because of the current ambiguity caused by court decisions as to whether web-only businesses are covered under title III.
> . . .
>
> The Department agrees that the ability to access the goods and services offered on the Internet through the Web sites of public accommodations is of great importance to individuals with disabilities, particularly those who are blind or who have low vision. When the ADA was enacted in 1990, the Internet was unknown to most of the public. Today, the Internet plays a critical role in daily life for personal, civic, commercial, and business purposes. In light of the growing importance of eBcommerce, [sic] ensuring nondiscriminatory access to the goods and services offered through the Web sites of covered entities can play a significant role in fulfilling the goals of the ADA.
>
> Although the language of the ADA does not explicitly mention the Internet, the Department has taken the

14

> position that title III covers access to Web sites of public
> accommodations.

28 C.F.R. pt. 36, App. A, at 816 (2011).

Because the DOJ's position that Title III applies to web-only businesses like

eBay is contained in the official commentary in the Code of Federal Regulations, it

is subject to deference, and this Court should follow it and apply it in this case.[1]

### D. The Ninth Circuit's current precedent does not hold that the ADA excludes web-only businesses.

#### 1. *Weyer v. Twentieth Century Fox Film Corp. does not address whether Title III of the ADA applies to the Internet.*

In the Ninth Circuit, *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d

1104 (9th Cir. 2000) is generally considered the leading authority and controlling

precedent concerning whether Title III of the ADA applies to Internet websites.

---

[1] While this Court seems disinclined to follow other guidance and interpretations from the DOJ on the ADA (*see Arizona ex rel. Goddard*, 603 F.3d at 674), the DOJ has stated many other times that Title III applies to web-only businesses. *See, e.g.,* Letter from Deval L. Patrick, Assistant Attorney General, Civil Rights Division, Department of Justice, to Tom Harkin, U.S. Senator (Sept. 9, 1996), available at
http://www.justice.gov/crt/foia/readingroom/frequent_requests/ada_tal/tal712.txt;
Brief of the United States as Amicus Curiae in Support of Appellant, (No. 99-50891), 1999 WL 33806215, available at
http://www.justice.gov/crt/about/app/briefs/hooks.pdf; Advanced Notice of Proposed Rulemaking ("ANPRM") on Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations. 75 Fed Reg. 43460, 43464 (explaining that the Department has been clear that the ADA applies to websites of public accommodations despite inconsistent court decisions).

*See Nat'l Fed. of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 952 (N.D. Cal. 2006) ("*Target I*"). Thus, it is understandable that the district court would rely on it in rejecting Plaintiff's ADA claim.

But *Weyer* does not actually address or even implicate the Internet or websites. Instead, *Weyer* addresses "whether an insurance company, like UNUM, that administers an employer-provided disability plan is a 'place of public accommodation.'" *Weyer*, 198 F.3d at 1114. In reality, the holding in *Weyer* is limited to this very narrow issue. Accordingly, the district court should not have relied on *Weyer* to reject Plaintiff's ADA claim because *Weyer* does not even apply to the instant case.

In answer to the narrow issue in *Weyer*, the court narrowly holds: "We agree with the Third and Sixth Circuits and hold that an insurance company administering an employer-provided disability policy is not a 'place of public accommodation' under Title III." *Id.* at 1115.

eBay is not an insurance company, and does Earll allege that it administers an employer-provided disability policy, which is all that *Weyer* addresses. Accordingly, any application of *Weyer* to the instant matter is misplaced. *Weyer* simply does not address whether websites are subject to Title III of the ADA.

Moreover, the passage from *Weyer* cited by the district court for the proposition that eBay is not subject to liability under the ADA as an Internet-only

16

business is found in dicta in *Weyer*. ER XX. In *Weyer*, the court "suggests" (but does not hold): "The principle of *noscitur a sociis* requires that the term, 'place of public accommodation,' be interpreted within the context of the accompanying words, and this context suggests that some connection between the good or service complained of and an actual physical place is required." *Weyer*, 198 F.3d 1114. Notably, the Court does not state that the context "requires" or "demands" a nexus with a physical place, but rather merely "suggests" it.

The Ninth Circuit has held that dicta should not be considered binding if it is unnecessary to the outcome of the case or can be deleted without affecting the argument. *Batjac Productions Inc. v. GoodTimes Home Video Corp.*, 160 F.3d 1223, 1232 (9th Cir. 1998). In *Weyer*, the Court's suggestion that the ADA requires a connection to a physical place runs afoul of both bases for disregarding dicta.

Following its suggestion, the Ninth Circuit in *Weyer* stated that "[t]he dispute in this case, over terms of a contract that the insurer markets through an employer, is not what Congress addressed in the public accommodations provisions." *Weyer*, 198 F.3d at 1114. This makes sense—an insurance contract is itself not a place of public accommodation, whether physical or virtual, nor are its terms—an insurance contract is merely a document. Thus, the basis of the Court's ruling in *Weyer* was that a dispute over contract terms does not implicate the ADA.

17

*Id*. Removing the suggestion regarding physical locations does not affect the outcome of the case, and deleting it would not even affect the argument. Accordingly, the physical place nexus language in *Weyer* is mere dicta and is not binding in the instant case. Therefore, the Court may find that the ADA applies to eBay, even as an Internet-only entity without violating binding precedent.

Moreover, the Court in *Weyer* does not explain why it chose a physical location as the connecting characteristic among the items listed in the ADA, as opposed to any other connecting characteristic. *Id.* In fact, the Court does not explain why it resorted to any canon of construction rather that relying on the plain language of the statute. Regardless, the Court misapplied the doctrine of *noscitur a sociis*. In *Ali v. Fed. Bureau of Prisons*, the Supreme Court stated in applying *noscitur a sociis*:

> Petitioner suggests that the common attribute is that both types of officers are charged with enforcing the customs and excise laws. But we see no reason why that should be the relevant characteristic as opposed to, for example, that officers of that type are commonly involved in the activities enumerated in the statute: the assessment and collection of taxes and customs duties and the detention of property.

552 U.S. 214, 225-26 (2008).

In *Weyer*, there is no reason why physical locations should be the relevant characteristic as opposed to, for example, "entities that offer goods or services to the public." This is, after all, in line with the broad purpose of the ADA and in line

with what Congress intended. The Court in *Weyer* inappropriately and unnecessarily chose more restrictive language than necessary, even though Congress expressly stated that the ADA should be construed broadly so as to protect disabled persons. Fortunately for Earll, this whole line of analysis is dicta and should be non-binding on the instant matter.

In the end, the narrow holding in *Weyer* does not concern or even implicate the Internet. *Weyer* is a case about insurance policies only; it certainly does not support the position that the ADA does not apply to the Internet.

> **2.    eBay's existence as an online-only store necessarily proves that having physical locations is not the appropriate connecting characteristic among the items enumerated in Title III.**

Section 12181(7)(E) of the ADA lists clothing stores and hardware stores specifically as being places of public accommodation. So at minimum, any clothing store or hardware store is subject to Title III. Earll alleges that eBay sells clothing and hardware. ER 10, 32, 59. Thus, eBay is a clothing store and a hardware store, and is therefore subject to Title III of the ADA.

By virtue of eBay's existence as a clothing and hardware store with no physical location, the Ninth Circuit's application in *Weyer* of the canon of *noscitur a sociis* is necessarily wrong. To decide otherwise, this Court would either have to

deny the existence of eBay entirely or somehow conclude that only some clothing and hardware stores are subject to Title III even though the ADA expressly states that all clothing and hardware stores are covered.

### E.    Other circuits have held that the ADA applies to websites.

The First and Seventh Circuits have held that Title III of the ADA applies to businesses lacking a nexus to a physical place, such as websites like eBay.[2]

In *Carparts Distribution Center v. Automotive Wholesaler's Association of New England*, 37 F.3d 12, 19 (1st Cir. 1994), the court found that the plain language of the ADA encompassed businesses that lacked physical structures and that it "would lead to illogical results to believe that Congress meant to prohibit discrimination against only those who physically visit a business, but not against those who seek out services offered to the public by telephone, mail, or the Internet." The court further stated that "to . . . limit the application of Title III to physical structures . . . would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges and advantages, available indiscriminately to other members of the general public." *Id*. at 20. *See also Nat'l Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200 (D. Mass. 2012) ("In a society in which business is increasingly conducted online, excluding businesses that sell services through the Internet from the ADA would run afoul of

---

[2] *But see Access Now, Inc. v. Southwest Airlines, Co.*, 227 F. Supp. 2d 1312 (S.D. Fla. 2002).

the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges and advantages, available indiscriminately to other members of the general public."); *Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28, 32-33 (2d Cir. 1999). ("We believe an entity covered by Title III is not only obligated by the statute to provide disabled persons with physical access, but is also prohibited from refusing to sell them its merchandise by reason of discrimination against their disability.")

In *Morgan v. Joint Administration Board et al*, the Seventh Circuit stated that "[t]he site of the sale is irrelevant to Congress's goal of granting the disabled equal access to sellers of goods and services. What matters is that the good or service be offered to the public." 268 F.3d 456, 459 (7th Cir. 2001).

Moreover, in *Doe v. Mutual of Omaha Insurance Co.*, the Seventh Circuit stated:

> the core meaning of [§ 12182(a)], plainly enough, is that the owner or operator of a store, hotel, restaurant, dentist's office, travel agency, theatre, ***Web site***, or other facility whether in physical space or in electronic space . . . that is open to the public cannot exclude disabled persons from entering the facility and, once in, from using the facility in the same way that the nondisabled do.

179 F.3d 557, 559 (7th Cir. 1999) (emphasis added).

The decisions reached in the First and Seventh Circuits support the stated intent of the ADA, while the Ninth Circuit's dicta in *Weyer* frustrates the ADA's

purpose. "The purpose of Title III of the ADA is to 'bring individuals with disabilities into the economic and social mainstream of American life . . . .'" *Kotev v. First Colony Life Ins. Co.*, 927 F. Supp. 1316, 1322 (C.D. Cal. 1996) (quoting H.R. Rep. No. 485, 101st Cong., 2d Sess., pt. 2, at 99 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 382). If this Court adopts the narrow view that the ADA does not apply to websites lacking a nexus to physical locations, then it will cut out individuals with disabilities from the economic and social mainstream of American life in violation of the ADA's purpose.

### F. Applying Title III of the ADA to websites would further the purpose of the ADA.

If the Court determines that *Weyer* does implicate websites, and thus controls the instant case as it relates to Earll's ADA claim, then it is time for this Court to update its precedent to reflect modern realities concerning the role of the Internet in society today.

The Internet "plays a critical role in the daily personal, professional, civic, and business life of Americans."[3] And the Internet is no doubt a part of "'the economic and social mainstream of American life . . . .'" *Kotev v. First Colony Life*

---

[3] Advance Notice of Proposed Rulemaking on Accessibility of Web Information and Services Provided by Entities Covered by the ADA, 28 CFR Parts 35 and 36, (July 26, 2010) *also available at* http://www.ada.gov/anprm2010/web anprm_2010.htm (hereinafter, "DOJ Proposed Rulemaking").

*Ins. Co.*, 927 F. Supp. 1316, 1322 (C.D. Cal. 1996) (quoting H.R. Rep. No. 485, 101st Cong., 2d Sess., pt. 2, at 99 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 382). For many Americans who are disabled, the Internet provides an opportunity for equal access to goods and services that they otherwise would not have. Congress could not have anticipated these developments in 1990, when the Internet was in its infancy and the web did not exist, but Congress did contemplate that the ADA would be applied to new and emerging technologies.[4]

The language of the ADA, coupled with the DOJ's official commentary and persuasive interpretations, demonstrate that the ADA was not drafted so narrowly as to only apply to discrimination concerning access to physical places. *See Anderson v. Gus Mayer Boston Store of Delaware*, 924 F. Supp. 763, 771 (E.D. Tex. 1996) ("Unlike other legislation designed to settle narrow issues of law, the ADA has a comprehensive reach and should be interpreted with this goal in mind."). Companies like eBay that offer goods and services to the public on the Internet must ensure that their policies do not discriminate against disabled individuals.

For all of these reasons, Earll asks that the Court find that eBay is a place of public accommodation under Title III of the ADA and reverse the district court rulings as to her ADA claim.

---

[4] DOJ Proposed Rulemaking.

## II.    THE DPA IS A FREESTANDING STATUTE.

"We review *de novo* a district court's dismissal for failure to state claim under Federal Civil Rule 12(b)(6). Questions of statutory interpretation are [also] reviewed *de novo*[.]" *Aguayo v. U.S. Bank*, 653 F.3d 912, 917 (9th Cir. 2011). "All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff." *Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116, 1120 (9th Cir. 2007) (internal citations and quotation marks omitted). To survive a motion to dismiss, a complaint need only allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).

### A.    If this Court finds the ADA applies to eBay, then eBay is also automatically liable for violating the DPA.

Earll alleges both ADA-dependent and ADA-independent claims against eBay under the DPA. ER 14, 35, 62. In the event this Court reverses the district court on the ADA claim, the district court's ruling on Earll's ADA-dependent DPA claim must also be reversed, and eBay should be found liable for violating the DPA. Cal Civ. Code §§ 54(c) & 54.1(d) ("A violation of the right of an individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) also constitutes a violation of this section[.]").

24

**B.      Even if the Court finds against Earll on her ADA claim, Earll still sufficiently alleged that eBay violated the DPA.**

This Court should reverse the district court's ruling that Earll failed to allege sufficiently that eBay's conduct constitutes an ADA-independent DPA violation. ER 19-20, 45. The district court incorrectly ruled that the DPA is not a freestanding statute—that it requires a defendant to have also violated some other California law or regulation in addition to the DPA. ER 19-20, 45. This is not the law in California, and Earll sufficiently alleged an ADA-independent violation of the DPA.

Section 54.1(a)(1) states:[5]

> Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, and privileges of all common carriers, airplanes, motor vehicles, railroad trains, motorbuses, streetcars, boats, or any other public conveyances or modes of transportation (whether private, public, franchised, licensed, contracted, or otherwise provided), telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement, or resort, and other places to which the general public is invited, subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons.

Cal. Civ. Code § 54.1(a)(1).

---

[5] Unlike the ADA claim, there is no dispute in the case that the DPA applies to web-only businesses. ER 19.

Section 54.1(a)(3) states:

> "Full and equal access," for purposes of this section in its application to transportation, means access that meets the standards of Titles II and III of the Americans with Disabilities Act of 1990 (Public Law 101-336) and federal regulations adopted pursuant thereto, except that, if the laws of this state prescribe higher standards, it shall mean access that meets those higher standards.

Cal. Civ. Code § 54.1(a)(3).

There are two specific problems with the district court's orders. First, it applied the wrong subsection of the DPA—§ 54.1(a)(3)—to Earll's case. ER 19. Second, the district court misinterpreted and misapplied the wrong subsection. ER 19.

First, the district court never should have applied § 54.1(a)(3) to this case because this case does not concern access to transportation, which is the sole subject of § 54.1(a)(3). The plain language of the statute makes this clear: "'Full and equal access,' for purposes of this section in its application to transportation, means . . ." Cal. Civ. Code § 54.1(a)(3). To ignore the limiting "transportation" language would be to ignore the will of the California legislature. When the statute says "in its application to transportation," the statute means "in its application to transportation." *See Connecticut Nat. Bank*, 503 U.S. at 253-54. It does not say and thus does not mean "in its application to transportation and websites."

Also, ignoring the "transportation" language would violate "one of the most basic interpretive canons, that [a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . ." *Corley v. United States*, 556 U.S. 303, 314 (2009) (internal quotation marks and citations omitted). Construing § 54.1(a)(3) so as to apply to all items in § 54.1(a)(1) would render superfluous and inoperative the phrase "in its application to transportation."

This reading of § 54.1(a)(3) is buoyed by the language in § 54.1(a)(1), which concludes: "subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons." Cal. Civ. Code § 54.1(a)(1). Because § 54.1(a)(1) includes its own limiting and defining language for "full and equal access," the only logical purpose for § 54.1(a)(3) is to differentiate the standard for transportation from the standard for all other items in § 54.1(a)(1).

Thus, Earll's construction of §§ 54.1(a)(1) & (3) gives effect to the full language in both subsections, which makes it the appropriate interpretation. *Corley*, 556 U.S. at 316.

Second, even if this Court finds that § 54.1(a)(3) applies to the instant case, the district court still misapplied it to Earll's detriment. The district court found that in order for Earll to succeed on an ADA-independent DPA claim, Earll must

27

allege that eBay's conduct violates both the DPA and a separate California state regulation. ER 19-20, 45. According to the district court, "the DPA is not a freestanding statute. To succeed on a DPA claim, a plaintiff must point to separate California state regulations that prescribe higher accessibility standards than the ADA." ER 19-20, 45. But the DPA does not use the word "separate" or any such synonym in describing which California law must prescribe higher standards than the ADA.

The relevant part of § 54.1(a)(3) states: "if the laws of [California] prescribe higher standards, [full and equal access] shall mean access that meets those higher standards." Cal. Civ. Code § 54.1(a)(3). Nowhere in § 54.1(a)(3) does the statute state that the DPA depends on other laws or otherwise make any mention of the need for dependence on a "separate" law or regulation, contrary to the district court's rulings. ER 19-20, 45.

Thus, if the DPA itself, as a law of California, prescribes a higher standard than the ADA when applied to websites like eBay.com, then the DPA is the standard to which eBay must adhere. The law in this district is clear that the DPA applies to websites, even if the ADA does not.[6] ER 19; *Nat'l Fed. of the Blind v.*

---

[6] Earll does not concede that the ADA does not apply to websites generally or eBay specifically. If the Court finds that the ADA does apply to websites, thereby interpreting the DPA not to prescribe a higher standard for accessibility than the ADA, then Earll's alternative ADA-dependent DPA claim controls. Either way, Earll's DPA claims, whether ADA-dependent or –independent, should survive.

*Target Corp.*, 582 F. Supp. 2d 1185, 1196 (N.D. Cal. 2007) ("*Target II*").

Accordingly, in the event the Court decides the ADA does not apply to eBay, then

the DPA itself necessarily prescribes a higher standard than the ADA for website

accessibility to which eBay must adhere.

Additionally, *Urhausen v. Longs Drug Stores Cal., Inc.*, 155 Cal. App. 4th

254, 261 (2007), a case upon which the district court relies in making its

"freestanding/separate" holding does not state that plaintiffs must rely on separate

state laws in order to plead a DPA claim. The sentence from *Urhausen* quoted by

the district court uses the phrase "or under state statutes, if the latter imposes a

higher burden." *Urhausen*, 155 Cal. App. 4th at 261 (internal citation omitted). So

not even the underlying case relied upon by the district employs any modifier—

"separate" or otherwise—to describe which state statutes can be used as a basis for

DPA violations. Furthermore, nowhere else in *Urhausen* does the court state that

the DPA is not a freestanding statute. Thus, *Urhausen* does not and cannot be

relied upon for the proposition that the DPA is not a freestanding statute.

The district court also relies on *Target II*, which also does not hold that DPA

claims are dependent on violations of separate state laws or regulations. *See Target*

*II*, 582 F. Supp. 2d at 1207. *Target II* highlights two important points: 1) the court

in *Target II* makes no mention of "separate" state laws, merely "relevant higher

standards of state law" and "state law" (*id*.); and, 2) the plaintiffs in *Target II* did

not base their DPA claim on separate laws or regulations (*see Target*, Case. No. 06-cv-1802-MHP, Dkt. 13, First Amended Complaint, ¶¶ 46-53), yet the court in *Target II* denied Target's motion for summary judgment (and prior to that a motion to dismiss). Rather, the plaintiffs in *Target* alleged ADA-dependent and ADA-independent DPA claims with no reference to any other state law or regulation, just as Earll has done in this case.

This all leads to the conclusion that the court in *Target II* did not hold that plaintiffs alleging DPA claims need to rely on separate state laws; thus, the district court incorrectly relied on *Target II* for the proposition that Earll needs to do so.

Furthermore, as Earll alleges, the DPA and the Unruh Act are the exclusive state laws regulating disability access for private entities applicable to this case. There are simply no other laws or regulations applicable. ER 35, 61-62. Thus, interpreting the DPA to require reliance on other laws would effectively render the DPA a dead letter. Such an interpretation would mean that courts must ignore the DPA's express language concerning the rights of disabled persons. This is an absurd and futile result that the legislature surely did not intend.

In the end, neither § 54.1(a)(3), *Urhausen*, nor *Target II*—the bases of the district court's orders—support the district court's conclusion that the DPA is not a freestanding statute. Consequently, the district court erred in holding that the DPA

is not a freestanding statute, and Earll's allegations that eBay violated the DPA are sufficient without pointing to eBay violating other state laws.

**C.     If this Court rules that the DPA is not a freestanding statute, Earll should be able to rely on her Unruh Act claim to support her DPA claim.**

The district court ruled that an alleged violation of the Unruh Act cannot support a DPA claim. ER 20. The district court explained that "[t]he Unruh Act does not establish standards for accessibility; rather it amounts to a prohibition against discrimination generally." ER 20. But the district court was incorrect in so ruling. While the Unruh Act does not include a checklist of accessibility standards for websites, the Act unambiguously establishes the standard that websites must be accessible to deaf and hard of hearing persons. Even the district court agreed. ER 19 ("Both the Unruh Act and DPA apply to websites . . . ."). So the Unruh Act actually does establish standards website accessibility, contrary to the district court's holding.

Accordingly, the district court's holding that Earll may not support her DPA claim with Unruh Act allegations cannot be squared with the fact that the Unruh Act requires websites to be accessible to deaf and hard of hearing persons. The district court cannot have it both ways, and given there is no question that the Unruh Act requires websites to be deaf-accessible, then it must be the district

31

court's ruling that is incorrect. Thus, even if this Court agrees with the district court that the DPA is not a freestanding statute, this Court should reverse the district court's decision that Earll may not support her DPA claim with her Unruh Act claim allegations.

## III.    EARLL SUFFICIENTLY ALLEGES EBAY VIOLATED THE UNRUH ACT.

### A.    If this Court finds the ADA applies to eBay, then eBay is also automatically liable for violating the Unruh Act.

Earll alleges both ADA-dependent and ADA-independent claims against eBay under the Unruh Act. ER 14, 37, 65. In the event this Court reverses the district court on the ADA claim, the district court's ruling on Earll's ADA-dependent Unruh Act claim must also be reversed, and eBay should be found liable for violating the Unruh Act. Cal Civ. Code § 51(f). ("A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section.").

### B.    Case law concerning whether intent is a required element of an independent Unruh Act claim is not clear, though it strongly suggests that intent is not required.

Despite the Ninth Circuit's explicit effort in *Munson v. Del Taco, Inc.*, 522 F.3d 997 (9th Cir. 2008) ("*Munson I*") to have the California Supreme Court

decide whether intent is a required element of independent Unruh Act claims, there still exists no definitive answer as to this issue.

In *Munson I*, the Ninth Circuit certified to the California Supreme Court the following question: "Must a plaintiff who seeks damages under California Civil Code section 52, claiming the denial of full and equal treatment on the basis of disability in violation of the Unruh Act, Cal. Civ. Code § 51, prove 'intentional discrimination'?" *Id*. at 999.

If the California Supreme Court had answered that exact question, then this Court would have clear precedent to follow in this case. But the California Supreme Court narrowed the question to: "May an Unruh Civil Rights Act plaintiff relying on subdivision (f) of section 51 obtain damages for denial of full access to a business establishment in violation of the ADA and the Unruh Civil Rights Act without proof the denial involved intentional discrimination?" *Munson v. Del Taco, Inc*., 46 Cal. 4th 661, 208 P.3d 623, 628 (Cal. 2009) ("*Munson II*"). While the California Supreme Court concluded that an Unruh Act plaintiff relying on the ADA need not demonstrate intentional discrimination, that answer does not fully resolve the issue before this Court because Plaintiff alleges both ADA-dependent and ADA-independent claims under the Unruh Act. So while the California Supreme Court made it crystal clear in *Munson II* that Plaintiff's ADA-dependent claim need not be based on intentional discrimination, it remains unclear whether

33

intentional discrimination is required to sustain Plaintiff's independent Unruh Act claim.

Since *Munson II*, the Ninth Circuit has addressed the issue once—and in Earll's favor—but only in an unpublished opinion. *Davis v. Patel*, No. 11-55908, at *3 (9th Cir. Feb. 5, 2013) (reversing the district court's ruling that the Unruh Act requires a showing of intentional discrimination) ("But '[i]t is undisputed that a plaintiff need not show intentional discrimination in order to make out a violation of the ADA' or the Unruh Act.")

Beyond *Davis*, neither the Ninth Circuit nor the California Supreme Court have weighed in on the remaining issue concerning independent claims since *Munson II*, and the lower courts that have addressed the issue are split. In October 2011, one court in the Northern District of California ruled "that the burdens of proof and standards of liability are identical for ADA and Unruh Act claims." *Lerma v. NTT McKee Retail Ctr. LLC*, No. 5:11-cv-2161-LHK, at *6-7 (N.D. Cal. Oct. 18, 2011).[7] Because the standard of liability for an ADA claim does not require intentional discrimination, then neither should an independent Unruh Act

---

[7] *See also Target II*, 582 F. Supp. 2d at 1205-06 ("Whether intent is required for an independent disability claim under the Unruh Act has not been addressed by the Ninth Circuit. . . . The court is not persuaded that the California Court of Appeals properly acknowledged the unique nature of disability discrimination in applying *Harris* [*v. Capital Growth Investors XIV*, 52 Cal. 3d 1142, 1175 (1991)] to disability claims for damages.").

claim. *But see K.M. v. Tustin Unified Sch. Dist.*, No. 10-cv-1011-DOC, at \*21
(C.D. Cal. July 5, 2011), *appeal filed* (9th Cir. July 26, 2011), No. 11-56259 ("To
prove a claim of discrimination under the Unruh Act, K.M. must prove intentional
discrimination, or, alternatively, a violation of the ADA.").[8]

In this situation, "[w]here the highest court of a state has not pronounced,
upon an issue of state law, as is the case here, a federal court sitting in diversity
must use its own best judgment to predict how that court would decide the issue."
*Wilson v. Haria and Gogri Corp.*, 479 F. Supp. 2d 1127, 1135 (E.D. Cal. 2007)
(citing *Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir.
1980)).

To do so, this Court need look no further than *Munson II*, in which the
California Supreme Court reiterated that the Unruh Act "'must be construed
liberally in order to carry out its purpose' to create and preserve a
nondiscriminatory environment in California business establishments by banishing
or eradicating arbitrary, invidious discrimination by such establishments.'"
*Munson II*, 208 P.3d at 626 (quoting *Angelucci v. Century Supper Club*, 41 Cal. 4th
160 (2007) (internal quotation marks omitted)).

Given that the California Supreme Court's most recent statement on the
Unruh Act forcefully argues that the Act should be construed liberally, a narrow

---

[8] As of April 23, 2013, *K.M.* has been fully briefed and orally argued, but the Ninth
Circuit has yet to file an opinion.

construction of the Unruh Act that requires intentional discrimination—when neither the ADA nor the DPA require it—would likely violate the California Supreme Court's position on this issue. Accordingly, this Court should reverse the district court's decisions and find that the Act does not require allegations of intentional discrimination.

### C. Earll sufficiently alleges eBay acted intentionally.

#### 1. Earll's factual allegations exceed the plausibility standard.

In the event this Court finds that an independent Unruh Act claim requires allegations of intentional discrimination, Earll's allegations in her Proposed First Amended Complaint ("PFAC") (ER 2-7, 13-14), First Amended Complaint ("FAC") (ER 23-29, 36-37), and Second Amended Complaint ("SAC") (ER 50-56, 63-65) meet her burden.

In its order denying Earll's motion for leave to amend (ER 19-20) and its orders granting eBay's motions to dismiss (ER 46-48, 71-73), the district court ruled that Earll failed to sufficiently allege that eBay intentionally discriminated against Earll. More specifically, the district ruled that Earll's allegations regarding intent did not rise from merely possible to the required plausible level. ER 20, 46-47, 72. Earll respectfully disagrees and asks this Court to hold that Plaintiff's allegations regarding intent under the Unruh Act are plausible. Therefore, Earll asks that this Court reverse the district court's decisions regarding intent.

The Supreme Court and the Ninth Circuit have articulated exactly how to interpret and apply the plausibility standard. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949 and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Moss*, 572 F.3d at 969 (quoting *Iqbal*, 129 S. Ct. at 1949). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss*, 572 F.3d at 969. Consequently, plausibility falls somewhere between possibility and probability. *See Id.*

In *Moss*, the Court evaluated whether the alleged fact that Secret Service Agents relocated the plaintiffs' anti-Bush political demonstration while leaving undisturbed a pro-Bush demonstration gave rise to a plausible inference of viewpoint discrimination. *Id.* at 971. The Court ruled that the alleged viewpoint discrimination was merely possible because the Secret Service moved the anti-Bush demonstration to a point equidistant as the pro-Bush demonstration from then-President Bush. *Id.* at 971-72. Unlike the allegations in *Moss*, Earll's

allegations in the PFAC, FAC, and SAC demonstrate that eBay's intent to discriminate is not merely possible, but quite plausible.

First, the PFAC, FAC, and SAC allege several facts that eBay had multiple opportunities to verify Earll's identity via means other than the telephone, but steadfastly refused to do so. ER 5-6, 27-28, 55, 64-65. eBay's purported goal for its verification process is to prevent fraud. Thus, by offering to verify her identity via alternate means, Earll provided eBay with the opportunity to satisfy its goal of preventing fraud. Yet eBay refused. Earll also alleges that after several communications, she reiterated her disability to eBay (*id.*), after which eBay forwarded her issue into the ether and never got back to Earll as promised (*id.*).[9] Taken together, it becomes plausible that eBay's reason for refusing to accommodate Earll is her disability. Furthermore, eBay never provided Earll with any reason other than her disability for being prevented from registering as a seller despite multiple two-way communications. ER 28. Adding this fact further raises the level of plausibility.

Comparing these facts to the facts in *Moss*, it becomes apparent that Earll's allegations meet the plausibility standard. Wherein *Moss*, the plaintiffs' allegations merely demonstrated that the Secret Service's conduct placed the plaintiffs on

---

[9] The analogous facts in *Moss* would be if the Secret Service moved the anti-Bush demonstrators to a point equidistant as pro-Bush demonstrators without knowing the plaintiffs were anti-Bush, and then removed them completely only after learning of their anti-Bush viewpoint.

equal footing with other protestors, Earll's allegations in this case demonstrate that eBay's conduct places her on worse footing than other would-be sellers. In *Moss*, the anti-Bush protestors were able to continue protesting at a distance equal to the President as the pro-Bush demonstrators. As such, the Secret Service accomplished its goal of without silencing the plaintiffs completely.

But, as alleged in this case, eBay is taking the opposite approach: it is accomplishing its purported goal of preventing potential fraud by "silencing" Earll completely. eBay is not, unlike in *Moss*, putting Earll on equal footing with non-deaf persons or offering an her equivalent method of registration, but rather completely preventing her from registering. Its method is unnecessary and counterproductive. As such, discriminatory intent is not just possible, but plausible.

Moreover, as Earll alleges, eBay connects individual buyers and sellers who generate eBay's revenue. ER 32. Thus, for eBay to make any money, it needs sellers. Here, Earll alleges she attempted many times to register as a seller. Yet eBay continually denied her the opportunity, which is antithetical to eBay's mission and business model. It is simply irrational from a business and economic perspective (to say nothing of ethical considerations) to deny Earll the opportunity to sell on eBay. If eBay denied all users the chance to register as sellers, then eBay could not make any money. Thus, the Court may draw a reasonable inference, at minimum, that eBay's reason for denying Earll was based on a discriminatory

intent.

Once again, *Moss* is instructive on this point. In *Moss*, the court ruled that the facts alleged "[did] not rule out the possibility of viewpoint discrimination," but it was more likely that the reason for the defendant's conduct was to accomplish its goal of protecting the President. 572 F.3d at 971-72. In other words, the defendant's conduct was more rational in light of protective goals than discriminatory goals. Here, though, the opposite is true. eBay's conduct is only rational in light of discriminatory goals, and not at all rational in light of its business goals. Consequently, discriminatory intent is more than merely possible; it is at least plausible, if not probable.

Second, in light of Earll's communications with eBay and in light of this lawsuit, which was filed in early 2010, eBay has had multiple opportunities to fix, alter, or modify its policy regarding telephone verification. But, as the PFAC, FAC, and SAC allege, eBay has not done so. ER 14, 37, 64. Despite litigation costs, negative press, and Earll's multiple requests that she simply be allowed to sell on eBay (and make eBay money in the process)—and even despite meeting Earll in person to discuss this very case—eBay refuses. ER 55. This refusal to modify its policy differentiates eBay's alleged conduct from the conduct alleged in *Moss*, and makes it more likely that eBay's intent is discriminatory.

Third, and finally, Earll alleges that it would be easy for eBay to implement

a system that would accommodate both deaf and blind persons without compromising fraud prevention because these systems are "readily available." ER 7, 23, 50. Earll even alleges how simple it is to fix the policy: the system simply needs to present PINs aurally and visually. ER 7, 29, 56. And rather than merely allege in a conclusory fashion that such systems are readily available and used by many companies, Earll even provides a concrete, factual example of a company utilizing a system suggested by Earll. ER 29, 56. Earll has effectively told eBay exactly how it can fix the problem, that doing so would be easy, and where to turn for an example on how to implement the solution. Regardless, eBay refuses. Its refusal to implement an equally effective yet less discriminatory verification system adds further credibility to Earll's claims of intentional discrimination.

Earll's factual allegations, which must be taken as true, make eBay's alleged discriminatory intent plausible, at minimum, because eBay's conduct is only rational if its intent is discriminatory. eBay's conduct simply makes no sense otherwise. At this juncture, Earll has more than satisfied her burden to allege non-conclusory facts that "allow the court to draw the reasonable inference that [eBay] is liable for the misconduct alleged." *Moss*, 572 F.3d at 969 (quoting *Iqbal*, 129 S. Ct. at 1949). Accordingly, the Court should find that Plaintiff has satisfactorily alleged an independent violation of the Unruh Act.

In its order granting eBay's motion to dismiss Earll's SAC, the district court

held: "Plaintiff cannot satisfy Rule 8's requirements by simply alleging that (1) she is deaf, (2) she notified Defendant that its seller verification procedure discriminated against deaf persons, (3) Defendant had the opportunity to verify her identity, but (4) Defendant nevertheless failed to register her as a seller. Rather, she must include some allegation firmly connecting her disability to Defendant's refusal to register her as a seller." ER 72.

The district court's holding is problematic for two primary reasons: (1) it contains a critical misstatement of the applicable pleading standard; and, (2) its factual summary is incomplete.

First, the district court held that Earll must "firmly connect[] her disability to" eBay's refusal. But this is wrong. What Earll must actually do is plausibly connect her disability to eBay's refusal, or in the words of *Moss*, allow the court to "reasonably infer [liability]." *Moss*, 572 F.3d at 970-71. Merriam-Webster defines "firm" as "indicating firmness or resolution,"[10] "plausible" as "appearing worthy of belief,"[11] and "reasonable" as "moderate, fair."[12] So the district court held that Earll needed to allege facts that resolve the matter of intent when the actual standard merely requires her to allege moderate facts that appear worthy of belief. That is a big difference. Thus, the district court applied the wrong pleading

---

[10] http://www.merriam-webster.com/dictionary/firmly.
[11] http://www.merriam-webster.com/dictionary/plausibly.
[12] http://www.merriam-webster.com/dictionary/reasonably.

standard to Earll's detriment.

Second, Earll alleges far more than the four items enumerated above. In addition to what is provided above, Earll also alleges (5) she communicated back and forth with eBay for over six weeks (ER 5-6, 27-28, 54), (6) she volunteered to verify her identity in some other way acceptable to eBay (ER 5-6, 27-28, 54), (7) she met in person with eBay to discuss this case and eBay still did not register her as a seller (ER 55), (8) there are easy and inexpensive verification system alternatives (ER 7, 29, 55-56), (9) pointed out a specific alternative two-factor verification system (ER 29, 55-56), (10) eBay has an economic incentive to allow Earll to register as a seller (ER 64-65), and (11) she was told via live chat that eBay would register her only if a hearing person answered the phone for her (which would defeat the whole purpose of identity verification) (ER 5, 27-28).[13][14]

Accordingly, the district court downplayed Earll's allegations regarding intent. This downplaying combined with the district court's application of the wrong pleading standard doomed Earll's Unruh Act claim, to the extent pleading of intent is required.

---

[13] This last allegation concerning having a hearing person handle the verification for her is especially important because it shows eBay actually considered her disability in deciding not to allow her to register.

[14] Furthermore, requiring Earll to have a hearing person interpret for her violates the ADA's implementing regulation. 28 C.F.R. pt. 36.303(c)(2)-(3) and (d).

### 2. The cases on which the district court relied are distinguishable from the instant case.

In support of its holding that Earll's allegations do not demonstrate willful misconduct, the district court relies on *Koebke v. Bernardo Heights Country Club*, 36 Cal. 4th 824 (2005) and *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1116 (N.D. Cal. 2011). ER 71-73. But *Koebke* is distinguishable on legal grounds, and *Young* is distinguishable on factual grounds.

The primary legal difference between *Koebke* and the instant matter is that *Koebke* was a review of a decision on a motion for summary judgment while the decisions below ruled on 12(b)(6) motions. Accordingly, the court in *Koebke* was able to consider extrinsic evidence to reach its decision. But here, the parties have not even begun discovery, so Earll has not had the opportunity to gather evidence.

Moreover, as discussed above, Earll has sufficiently pleaded intentional discrimination, so Earll should be allowed to continue her case while she seeks discovery to prove her case. *See Franklin Mint Co. v. Manatt*, 184 Cal. App. 4th 313, 363 (Cal. App. 2010) (holding that "a lawyer is not required to possess all of the evidence necessary to prove a claim prior to filing a complaint. A reasonable lawyer may rely on discovery and further investigation conducted after filing the lawsuit to supply the evidentiary foundation for the claim."); *see also Elder v. Nat'l Conference of Bar Examiners*, No. 11-cv-199-SI, at *6 (N.D. Cal. Feb. 16,

2011) (in denying a motion to dismiss or in the alternative for summary judgment, the court ruled that "the plaintiff should be allowed to take discovery and develop a full factual record . . . .").

*Young*, on the other hand, was a ruling on a motion to dismiss, but it is factually distinguishable from the instant case. In *Young*, the bipolar plaintiff alleged that Facebook discriminated against her by "addressing her concerns with 'automated responses' and '[p]regenerated notices' rather than a human customer service system that assists individuals with mental disabilities." 790 F. Supp. 2d at 1116. Essentially, the plaintiff in *Young* alleged that she never got past Facebook's automated gatekeeper and was thus unable to tell Facebook about her disability. Understandably, the court ruled that these facts did not allow it to infer intentional discrimination, as the plaintiff truly was treated like every other customer. But here, Earll alleges she got past eBay's automated gatekeeper and communicated with real humans who treated her differently after learning of her disability. ER 5-6, 27-28, 54.

The court in *Young* continued: "Although she alleges that Facebook's customer service system was particularly difficult for her to use because of her bipolar disorder, she does not allege that Facebook treated her differently *because* of her disability, nor[] does not show that Facebook applies its policies in a way that *targets* individuals with disabilities." *Young*, 790 F. Supp. 2d at 1116

45

(emphasis in original). Again, the apparent similarity to the instant matter vanishes upon close inspection. Unlike in *Young*, Earll does not allege that eBay "treats *all* users in the same cold, automated way;" rather, Earll expressly alleges that eBay treated her differently because of her disability and that eBay applies its policies in a way that targets individuals with disabilities. ER 7, 29, 55-56. Thus, *Young* is distinguishable from the instant matter and the district court should not have relied on it to decide against Earll.

Ultimately, the district court incorrectly ruled that the Unruh Act requires allegations of intent. But even if correct, Earll sufficiently alleges that eBay intentionally discriminated against her because she plausibly and reasonably connected her disability to eBay's conduct. Accordingly, Earll respectfully requests that this Court reverse the district court's Unruh Act rulings.

## **CONCLUSION**

For the reasons discussed herein, Earll respectfully asks this Court to reverse the District Court's judgment and orders granting eBay's motions to dismiss with prejudice as to Earll's claims for violations of the ADA, the DPA, and the Unruh Act and denying Earll's motion for leave to file an amended complaint.


Dated: April 26, 2013                ASCHENBRENER LAW, P.C.


                                     By: s/ Michael Aschenbrener
                                     Michael Aschenbrener
                                     *Attorneys for Plaintiff-Appellant*

## **STATEMENT OF RELATED CASES**

Plaintiff-Appellant Earll is aware of no related cases.

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because:

■ this brief contains 11,105 words, excluding the parts of the brief exempted

by Fed. R. App. P. 32(a)(7)(B)(iii).

Dated: April 26, 2013                     ASCHENBRENER LAW, P.C.


By: <u>s/ Michael Aschenbrener</u>
Michael Aschenbrener
*Attorneys for Plaintiff-Appellant*

49

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 26, 2013.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Dated: April 26, 2013                              ASCHENBRENER LAW, P.C.


                                                   By: <u>s/ Michael Aschenbrener   </u>
                                                   Michael Aschenbrener
                                                   *Attorneys for Plaintiff-Appellant*