No. 13-15134

IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

MELISSA EARLL,
Plaintiff-Appellant,

v.

EBAY INC.,
Defendant-Appellee.

On Appeal from the United States District Court
For the Northern District of California
NO. 5:11-CV-262-EJD

BRIEF OF APPELLEE EBAY INC.

David B. Salmons
Bryan M. Killian
BINGHAM McCUTCHEN LLP
2020 K Street NW
Washington, DC 20006
(202) 373-6000
David.Salmons@bingham.com

*Counsel for Appellee eBay Inc.*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1, eBay Inc. states that it has no parent corporation, that it is a publicly held corporation, and that no publicly held corporation owns 10 percent or more of its stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT .....................................................i

TABLE OF AUTHORITIES ...........................................................................iv

JURISDICTIONAL STATEMENT ..................................................................1

STATEMENT OF ISSUES ..............................................................................1

RELEVANT STATUTORY PROVISIONS ......................................................2

INTRODUCTION ...........................................................................................5

STATEMENT OF RELEVANT FACTS ..........................................................7

SUMMARY OF ARGUMENT ........................................................................9

ARGUMENT .................................................................................................11

I.     The Internet Website Of A Web-Only Business Is Not A "Place Of Public Accommodation" Under The ADA ..........................................11

     A.     The ADA makes plain that a business is not a "place of public accommodation" unless it operates a real, physical space ................................................................................13

          1.     "Place" .............................................................................15

          2.     "Public accommodation" ..................................................17

     B.     The canons of statutory construction confirm that only real, physical spaces can be "places of public accommodation" .......19

     C.     Ms. Earll's interpretation of the ADA violates fundamental rules of statutory interpretation .................................................20

     D.     *Weyer* is on-point, remains correct, and should not be overruled .................................................................................23

     E.     Ms. Earll's policy arguments are unfounded and irrelevant ......29

# <u>TABLE OF CONTENTS</u>
(continued)

<u>Page</u>

II.    The DPA Does Not Provide A Cause Of Action For A Plaintiff
       Complaining That She Was Unable To Access The Internet
       Website Of A Web-Only Business .......................................................34

       A.    Internet websites are not "places" to which the DPA applies....34

       B.    Ms. Earll identified No Applicable website accessibility
             standards ...................................................................................38

III.   Ms. Earll Did Not State An Unruh Act Claim.......................................42

       A.    Ms. Earll must plead and prove intentional discrimination .......42

       B.    Ms. Earll did not plead intentional discrimination....................45

CONCLUSION.....................................................................................................50

CERTIFICATE OF COMPLIANCE...................................................................51

CERTIFICATE OF SERVICE ...........................................................................52

STATEMENT OF RELATED CASES ...............................................................53

iii

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Access Now, Inc. v. Southwest Airlines Co.*,
227 F. Supp. 2d 1312 (S.D. Fla. 2002)..............................................23, 26, 29, 34

*Ali v. Federal Bureau of Prisons*,
552 U.S. 214 (2008)..............................................................................21, 22

*Am. Fed'n of State, Cnty., & Mun. Emps. v. Washington*,
770 F.2d 1401 (9th Cir. 1985) ...........................................................47

*Ariz. ex rel. Goddard v. Harkins Amusement*,
603 F.3d 666 (9th Cir. 2010) .............................................................31

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................46, 47, 48

*Atl. Cleaners & Dyers, Inc. v. United States*,
286 U.S. 427 (1932)...........................................................................16

*Bankamerica Corp. v. United States*,
462 U.S. 122 (1983)............................................................................6

*Barnett Bk. of Marion County, N.A. v. Nelson*,
517 U.S. 25 (1996)..............................................................................12

*Bass v. County of Butte*,
458 F.3d 978 (9th Cir. 2006) .............................................................42

*Beecham v. United States*,
511 U.S. 368 (1994)............................................................................19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................48

*Best Life Assur. Co. v. Comm'r of Internal Revenue*,
281 F.3d 828 (9th Cir. 2002) .............................................................24

*Boy Scouts of Am. v. Dale*,
530 U.S. 640 (2000)............................................................................14

iv

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Burks v. Bosso,*
    180 N.Y. 341 (1905) ............................................14

*Californians for Disability Rights v. Mervyn's LLC,*
    81 Cal. Rptr. 3d 144 (Cal. Ct. App. 2008) .........................41

*Carparts Distrib. Ctr. v. Auto. Wholesaler's Ass'n of New England,*
    37 F.3d 12 (1st Cir. 1994) .................................26, 27

*Chabner v. United of Omaha Life Ins. Co.,*
    225 F.3d 1042 (9th Cir. 2000) ..............................26

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,*
    467 U.S. 837 (1984) .........................................33

*Christensen v. Harris Cnty.,*
    529 U.S. 576 (2000) .........................................31

*Circuit City Stores, Inc. v. Adams,*
    532 U.S. 105 (2001) .........................................19

*Clark v. Martinez,*
    543 U.S. 371 (2005) .........................................24

*Clegg v. Cult Awareness Network,*
    18 F.3d 752 (9th Cir. 1994) ................................14

*Coronado v. Cobblestone Vill. Comm. Rentals,*
    77 Cal. Rptr. 3d 883 (Cal. Ct. App. 2008) .....................40, 41

*Davis v. Patel,*
    2013 WL 427740 (9th Cir. Jan. 10, 2013) .......................44

*Dir., Office of Workers' Compensation Programs v. Greenwich Collieries,*
    512 U.S. 267 (1994) .........................................15

*Doe v. Mut. of Omaha Ins. Co.,*
    179 F.3d 557 (7th Cir. 1999) ...............................27

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Donald v. Sacramento Valley Bank*,
   260 Cal. Rptr. 49 (Cal Ct. App. 1989) ................................................. 41

*Faulkner v. Solazzi*,
   64 A. 947 (Conn. 1907) ......................................................................... 14

*Ford v. Schering-Plough Corp.*,
   145 F.3d 601 (3d Cir. 1998) ................................. 12, 13, 20, 28, 29

*George v. Bay Area Rapid Transit*,
   577 F.3d 1005 (9th Cir. 2009) ................................................................ 6

*Gooch v. United States*,
   297 U.S. 124 (1936) ............................................................................. 21

*Hall St. Assocs. v. Mattel*,
   552 U.S. 576 (2008) .............................................................................. 19

*Harris v. Capital Growth Investors XIV*,
   805 P.2d 873 (Cal. 1991) ...................................................................... 43

*Henry A. v. Willden*,
   678 F.3d 991 (9th Cir. 2012) ................................................................ 11

*Hooks v. OKBridge, Inc.*,
   2000 WL 1272847 (5th Cir.) ................................................................ 32

*James v. United States*,
   550 U.S. 192 (2007) ............................................................................. 21

*Jarecki v. G.D. Searle Co.*,
   367 U.S. 303 (1961) ............................................................................. 21

*Koebke v. Bernardo Heights Country Club*,
   115 P.3d 1212 (Cal. 2005) ...................................................... 46, 47, 48

*Lentini v. Cal. Ctr. for the Arts*,
   370 F.3d 837 (9th Cir. 2004) ...................................................... 44, 45

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Marsh v. Edwards Theatres Circuit, Inc.*,
134 Cal. Rptr. 844 (Cal. Ct. App. 1976)................................................39

*McNeil v. Time Ins. Co.*,
205 F.3d 179 (5th Cir. 2000) ..............................................................27

*Merrill v. Navegar, Inc.*,
28 P.3d 116 (Cal. 2001) .......................................................................40

*Miller v. Gammie*,
335 F.3d 889 (9th Cir. 2003) ...............................................................28

*Missouri v. Illinois*,
200 U.S. 496 (1906).............................................................................6

*Moss v. United States Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) .......................................................46, 49

*Munson v. Del Taco*,
208 P.3d 623 (Cal. 2009) .............................................................43, 44

*Nat'l Cable & Telec. Assn. v. Brand X Internet Servs.*,
545 U.S. 967 (2005).............................................................................33

*Nat'l Fed'n of the Blind v. Target Corp.*,
452 F. Supp. 2d 946 (N.D. Cal. 2006).........................................passim

*Nat'l Fed'n of Blind v. Target Corp.*,
582 F. Supp. 2d 1185 (N.D. Cal. 2007)...........................37, 38, 41, 42

*Navajo Nation v. Dep't Health & Human Servs.*,
325 F.3d 1133 (9th Cir. 2003) .............................................................30

*Noah v. AOL Time Warner Inc.*,
261 F. Supp. 2d 532 (E.D. Va. 2003) ...........................................26, 29

*Pallozzi v. Allstate Life Ins. Co.*,
198 F.3d 28 (2d Cir 1999) .............................................................27, 28

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Parker v. Metro. Life Ins. Co.*,
121 F.3d 1006 (6th Cir. 1997) ..............................................................13, 20, 28, 32

*People ex rel. Deukmejian v. CHE, Inc.*,
197 Cal. Rptr. 484 (Cal. Ct. App.1983).........................................................40, 41

*Perrin v. United States*,
444 U.S. 37 (1979)...............................................................................................15

*Pineda v. Williams-Sonoma Stores, Inc.*,
246 P.3d 612 (Cal. 2011) .....................................................................................35

*Price v. Stevedoring Servs. of Am., Inc.*,
697 F.3d 820 (9th Cir. 2012) ...............................................................................32

*Rendon v. Valleycrest Prods. Ltd.*,
294 F.3d 1279 (11th Cir. 2002) ...........................................................................28

*Reno v. ACLU*,
521 U.S. 844 (1997)..............................................................................................11

*Reycraft v. Lee*,
99 Cal. Rptr. 3d 746 (Cal. Ct. App. 2009)..........................................................42

*Ry. Emps. Dep't v. Hanson*,
351 U.S. 225 (1956)................................................................................................6

*S.D. Warren Co. v. Maine Bd. of Env. Prot.*,
547 U.S. 370 (2006)..............................................................................................19

*Stern v. Sony Corp. of Am.*,
459 Fed. Appx. 609 (9th Cir. 2011)...............................................................25, 30

*Stoutenborough v. Nat'l Football League, Inc.*,
59 F.3d 580 (6th Cir. 1995) .................................................................................28

*Taniguchi v. Kan Pac. Saipan*,
132 S. Ct. 1997 (2012).........................................................................................24

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Torres v. AT&T Broadband, LLC*,
　158 F. Supp. 2d 1035 (N.D. Cal. 2001)............................................................28

*United States v. Baird*,
　85 F.3d 450 (9th Cir. 1996) ............................................................................19

*United States v. Bolanos-Hernandez*,
　492 F.3d 1140 (9th Cir. 2007) ........................................................................17

*United States v. Kimsey*,
　668 F.3d 691 (9th Cir. 2012) ..........................................................................19

*United States v. Tohono O'Odham Nation*,
　131 S. Ct. 1723 (2011)....................................................................................13

*Urhausen v. Longs Drug Stores Cal.*,
　65 Cal. Rptr. 3d 838 (Cal. Ct. App. 2007).......................................................42

*Weyer v. Twentieth Century Fox Film Corp.*,
　198 F.3d 1104 (9th Cir. 2000) ...................................................................passim

*Wood v. San Diego*,
　678 F.3d 1075 (9th Cir. 2012) ........................................................................47

*Young v. Facebook, Inc.*,
　790 F. Supp. 2d 1110 (N.D. Cal. 2011)...........................................................29

### STATUTES

28 U.S.C. § 1291 .................................................................................................1

28 U.S.C. § 1331 .................................................................................................1

28 U.S.C. § 1367 .................................................................................................1

42 U.S.C. § 12181, *et seq.*.................................................................................1

42 U.S.C. § 12181(7) ...................................................................................passim

42 U.S.C. § 12181(7)(A)–(L) ...........................................................................17

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

42 U.S.C. § 12181(7)(A)................................................................18

42 U.S.C. § 12181(7)(B)................................................................17

42 U.S.C. § 12181(7)(C)................................................................17

42 U.S.C. § 12181(7)(D)................................................................22

42 U.S.C. § 12181(7)(E)................................................................17

42 U.S.C. § 12182(a) ..........................................................3, 13, 21

42 U.S.C. § 12187................................................................16

42 U.S.C. § 12189................................................................16, 17

Cal. Civ. Code § 51, *et seq.*................................................................1

Cal. Civ. Code § 51(b)................................................................3

Cal. Civ. Code § 51(f)................................................................43

Cal. Civ. Code § 52.6(d)................................................................36

Cal. Civ. Code § 54, *et seq.*................................................................1

Cal. Civ. Code § 54.1(a)(1)................................................................passim

Cal. Civ. Code § 54.1(a)(2)................................................................37

Cal. Civ. Code § 54.1(a)(3)................................................................3, 40

Cal. Civ. Code § 54.1(c) ................................................................35

Cal. Civ. Code § 54.1(d)................................................................38

Cal. Civ. Code § 54.2(a)................................................................36

Cal. Civ. Code § 54.3................................................................36

Cal. Civ. Code § 54.4................................................................36

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

Cal. Civ. Code § 54.9(a)–(b) ..................................................................36

Cal. Civ. Code § 1936.01(b)(3)(A) ........................................................36

Cal. Pub. Util. Code § 2881.2 ................................................................38

Civil Rights Act of 1875, 18 Stat. 335 ...................................................14

Civil Rights Act of 1964, 42 U.S.C. § 2000a, *et seq.* .............................14

### OTHER AUTHORITIES

28 C.F.R. § 36.104 .................................................................................31

BLACK'S LAW DICTIONARY (abr. 8th ed. 2005) ......................................24

H.R. Rep. No. 101-485, pt. 3 (1990) ......................................................30

RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE (2d ed. 1987) ..16, 18, 23

WEBSTER'S THIRD NEW INT'L DICTIONARY (unabr. 1961) ....................335

WEBSTER'S THIRD NEW INT'L DICTIONARY (1986) ..............................15, 16, 18, 23

## JURISDICTIONAL STATEMENT

Pursuant to 28 U.S.C. §§ 1331 and 1367, the district court had jurisdiction over Ms. Earll's claim under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.*, and her state-law claims under the California Disabled Persons Act ("DPA"), Cal. Civ. Code § 54, *et seq.*, and the Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code § 51, *et seq*.  On December 20, 2012, the district court dismissed her second amended complaint with prejudice.  *See* ER 83.  Ms. Earll filed a timely notice of appeal on January 18, 2013.  *Id.*  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.  Do Title III of the ADA and the DPA apply only to real, physical spaces and, thus, not to the Internet website of a web-only business?

2.  To state a claim under the DPA, must a plaintiff without an ADA claim identify applicable accessibility standards the defendant allegedly violated?

3.  To state a claim under the Unruh Act, must a plaintiff without an ADA claim allege that the defendant intentionally discriminated against her because of her disability?

4.  Did Ms. Earll fail to plead that eBay intentionally discriminated against her because she is deaf?

1

## **RELEVANT STATUTORY PROVISIONS**

### Federal Law

The definition section of Title III of the ADA, 42 U.S.C. § 12181(7), provides that:

> The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce—
>
> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
>
> (B) a restaurant, bar, or other establishment serving food or drink;
>
> (C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
>
> (D) an auditorium, convention center, lecture hall, or other place of public gathering;
>
> (E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;
>
> (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;
>
> (G) a terminal, depot, or other station used for specified public transportation;

2

(H) a museum, library, gallery, or other place of public display or collection;

(I) a park, zoo, amusement park, or other place of recreation;

(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

The first substantive provision of Title III of the ADA, 42 U.S.C. § 12182(a), provides that:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

<u>State Law</u>

The DPA, Cal. Civ. Code § 54.1(a), provides that:

(1) Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, and privileges of all common carriers, airplanes, motor vehicles, railroad trains, motorbuses, streetcars, boats, or any other public conveyances or modes of transportation (whether private, public, franchised, licensed, contracted, or otherwise provided), telephone facilities, adoption agencies, private schools, hotels,

lodging places, places of public accommodation, amusement, or resort, and other places to which the general public is invited, subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons.

…

(3) "Full and equal access," for purposes of this section in its application to transportation, means access that meets the standards of Titles II and III of the Americans with Disabilities Act of 1990 (Public Law 101-336) and federal regulations adopted pursuant thereto, except that, if the laws of this state prescribe higher standards, it shall mean access that meets those higher standards.

The Unruh Act, Cal. Civ. Code § 51(b), provides:

All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

## **INTRODUCTION**

Years ago, when Ms. Earll wanted to sell products through eBay's Internet website, eBay.com, eBay allegedly required prospective sellers to verify their identities over the phone. Claiming that policy kept her and other deaf sellers from registering, Ms. Earll sued eBay under federal and California laws. Now that her case has been dismissed, she frames this appeal as asking whether disabled persons have "the same right to use the Internet as non-disabled persons." Earll Br. 7.

Deflated of exaggeration, this appeal more pointedly asks whether antidiscrimination laws that regulate "places of public accommodation" afford remedies to disabled users who cannot complete a facially neutral process for registering to use the Internet website of a web-only business. None does. By their text and structure, Title III of the ADA and the DPA forbid discrimination against the disabled only in connection with real, physical spaces. There is no such connection alleged here. There also are no applicable website accessibility standards alleged here that the DPA might be used to enforce. And facially neutral website registration policies like eBay's alleged policy do not imply an intent to discriminate against prospective users because of their disability, which is required to establish a violation of the Unruh Act.

While eBay does not dispute that the disabled deserve protection from discrimination, this case boils down to a straightforward case of statutory

interpretation. Ms. Earll, however, misses few chances to steer this case out of the realm of law and into the realm of policy. She would have this Court substitute her policy judgments over that of Congress and the California legislature, manifested in the plain language of the ADA, DPA, and Unruh Act. The "fact that [a] court must decide" a case "does not mean, of course, that it takes the place of a legislature." *Missouri v. Illinois*, 200 U.S. 496, 519 (1906). The legislature is better equipped to consider questions of policy, for the costs and benefits "are numerous and complex. They may well vary from age to age and from industry to industry. What would be needful one decade might be anathema the next. The decision rests with the policy makers, not with the judiciary." *Ry. Emps. Dep't v. Hanson*, 351 U.S. 225, 234 (1956). *See Bankamerica Corp. v. United States*, 462 U.S. 122, 140 (1983) (when "Congress [has] chose[n] to deal with the problems" in a particular way, courts "are bound to respect that choice … not to rewrite the statute based on [their] notions of appropriate policy"). An appreciation of the relative competencies of the judiciary and the legislature is particularly important in ADA cases. *See George v. Bay Area Rapid Transit*, 577 F.3d 1005, 1012–13 (9th Cir. 2009) (certain interpretations of the ADA can be "very problematic" because "courts are ill-equipped … to make what amount to engineering, architectural, and policy determinations as to whether a particular

design feature is feasible and desirable") (quoting *Indep. Living Res. v. Or. Arena Corp.*, 982 F. Supp. 698, 746 (D. Or. 1997)) (internal quotations marks omitted).

In accordance with the ordinary and common-law meanings of the relevant statutory terms, Congress and the California legislature intentionally imposed the antidiscrimination mandates of the ADA and DPA on only real, physical spaces and limited the Unruh Act to intentional discrimination. None of those Acts is concerned with the facially neutral registration policy of a web-only business. If legislatures consider extending their laws to reach facts like those alleged here, they can balance the costs of regulation against the perceived benefits, then tailor standards and remedies appropriate to the unique circumstances of the Internet.

Ms. Earll has not stated a claim under the ADA, DPA, or Unruh Act. The district court judgment dismissing her complaint should be affirmed.

## STATEMENT OF RELEVANT FACTS

The following facts draw from allegations in Ms. Earll's three complaints. ER 1–15, 22–36, 49–67. For now, eBay assumes they are true.

Ms. Earll alleges that eBay is an Internet-only or web-only business. *See* Earll Br. 1. Through its Internet website, eBay.com, eBay provides a variety of ways for sellers of goods to connect with buyers across the globe. In 2008, Ms. Earll attempted to register as a seller on eBay.com. ER 27. At the time, eBay verified potential sellers by calling them. ER 24. Ms. Earll had Internet chats with

eBay's customer service representatives and sent eBay's Trust and Safety team emails, asking for a way to verify herself without a phone call because she is deaf. ER 27–28. She claims that, though eBay employees tried to find alternatives, none worked, so she did not complete the seller-registration process. ER 5–6, 27–28. She tried registering again in 2009, to no avail. *Id.*

In March 2010, Ms. Earll sued eBay in federal district court in Missouri, alleging violations of federal and California antidiscrimination laws. ER 17. The case was transferred to the Northern District of California, *id.*, where her claims were dismissed in three stages. In the first stage, the court denied Ms. Earll leave to amend her claim under Title III of the ADA because the claims failed as a matter of law: eBay.com is not a real, physical space and thus not a "place of public accommodation" under the Act. ER 18–19. The court also held that the state-law claims in her proposed amended complaint were deficient and granted her leave to replead them to identify website accessibility standards for her DPA claim and to plead intentional discrimination for her Unruh Act claim. ER 19–20.

Ms. Earll amended her complaint. ER 22–36. Attempting to show intentional discrimination, she deleted allegations that eBay employees tried to help her register. She did not, however, identify website accessibility standards that eBay violated, as the court required. And without the court's leave, she attempted to replead her ADA claim.

In the second stage of the dismissal, the district court rejected Ms. Earll's request to reconsider her ADA claim, then held that she had not stated state-law claims. ER 44. Her DPA claim failed because she conceded that no applicable website accessibility standards exist. ER 45. And her Unruh Act claim failed because her factual allegations at most showed that eBay's alleged seller-registration policy had a disparate impact on the deaf. ER 46–47.

The district court gave Ms. Earll one last chance to replead her Unruh Act claim. ER 48. She deleted more allegations and newly alleged that eBay did not register her after an in-person meeting with her during the case. ER 71. In the third and final stage of the dismissal, the court held that Ms. Earll's factual allegations still did not show intentional discrimination. ER 72.

## SUMMARY OF ARGUMENT

The text, structure, context, and history of Title III of the ADA indicate that the "places of public accommodation" to which it applies are all real, physical spaces. That was the connotation of the ordinary meanings of the terms Congress used in the ADA: "place," "public accommodation," "establishment," "store," etc. Two apropos canons of construction—*ejusdem generis* and *noscitur a sociis*—confirm that conclusion. Congress could have imposed Title III's obligations on all businesses engaged in interstate commerce but focused on real, physical spaces using terminology ("places of public accommodation") that historically has

9

connoted only a subset of businesses—those that operate real, physical spaces for the public and thus have heightened duties of care and service.

Reading Title III just over a decade ago, this Court agreed that it reaches only real, physical spaces. *See Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104 (9th Cir. 2000). That decision is binding, on-point, correct, and in line with the majority view. The Court cannot and should not overrule or distinguish it.

Ms. Earll contends that reversal will vindicate important antidiscrimination principles. Given the clarity of the text, structure, and history of Title III, policy arguments are irrelevant. Congress is uniquely equipped to collect facts, analyze them, and tailor appropriate and balanced accessibility standards. Thus Congress must weigh the costs and benefits of extending antidiscrimination laws designed for real, physical spaces to the Internet. To date, Congress has not taken action.

Federal regulations also focus on real, physical spaces. Ms. Earll cites nonbinding statements of the Department of Justice, but none help her. Those statements are not entitled to deference. They also are inconsistent with each other: DOJ has vacillated between a position Ms. Earll likes (the ADA applies to all websites) and a position she dislikes (the ADA applies to some websites—those of businesses with real, physical spaces open to the public).

Likewise, the text, structure, and context of the DPA indicate it, too, applies only to real, physical spaces. Relying on an unpersuasive lower-court opinion to

the contrary, the district court opined that the DPA does apply to eBay.com. This Court should review that threshold issue, as the correct interpretation of the DPA independently supports judgment for eBay.

The district court's other reasons for dismissing Ms. Earll's state-law claims are correct. According to the text of the DPA and a line of state-court decisions, Ms. Earll must identify applicable accessibility standards eBay violated. She admits none exists. And according to state-court decisions interpreting the Unruh Act, Ms. Earll must plead and prove that eBay intentionally discriminated against her. She has not. After stripping away conclusory allegations in her complaints, all that remains are allegations that at most suggest that eBay's alleged seller-registration policy had a disparate impact on the deaf.

## ARGUMENT

This Court reviews the district court's orders dismissing Ms. Earll's claims *de novo*. *See Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012).

## I. The Internet Website Of A Web-Only Business Is Not A "Place Of Public Accommodation" Under The ADA.

Internet websites are not real, physical spaces. They are not "places" in any sense. The Internet is a means of remote communication, "a unique medium … located in no particular geographical location but available to anyone, anywhere in the world, with access to the Internet." *Reno v. ACLU*, 521 U.S. 844, 851 (1997).

11

And websites are a series of digital documents that computers and other devices display so a user of one computer or device can interact with another.

Internet websites of web-only businesses are outside the scope of Title III of the ADA because the "places of public accommodation" to which Title III applies—the "places," "establishments," and "stores" listed in the statute—encompass only real, physical spaces open to the public. Websites are not outside the ADA simply because the Internet was not widespread in 1990, when the ADA was enacted. *See* Earll Br. 12 (discussing *Pa. Dep't of Corrections v. Yeskey*, 524 U.S. 206 (1998)). Many federal laws enacted before the proliferation of the Internet apply to the Internet because statutes, if written broadly enough, can be applied to unforeseen situations. *See, e.g.*, *Barnett Bk. of Marion County, N.A. v. Nelson*, 517 U.S. 25, 40 (1996) (noting that the Sherman Act was applied to new businesses, to the surprise of many, because of the Act's "highly general language"). For example, Congress used words in the ADA whose meanings in 1990 were broad enough that Internet cafés could be "service establishments" (and, hence, "places of public accommodation") today because they are real, physical spaces open to the public. In contrast, none of the words in the ADA was so open-ended in 1990 that it now reaches an Internet website like eBay.com.

This Court and others already have held that Title III applies only to real, physical spaces. *See Weyer*, 198 F.3d at 1114–15; *see also Ford v. Schering-*

*Plough Corp.*, 145 F.3d 601, 612–13 (3d Cir. 1998); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1010–11 (6th Cir. 1997) (en banc). Ms. Earll asks the Court to reverse itself, *see* Earll Br. 15–19, but the alternative she advances is unpersuasive even if the panel had that option. Her position rests on a policy preference that the ADA should apply to eBay.com because the Internet is "an important part of the social and economic mainstream in America." Earll Br. 5. But "considerations of policy divorced from the statute's text and purpose could not override its meaning." *United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723, 1731 (2011). Congress reasonably pursued the ADA's broad antidiscrimination goals in real, physical spaces only. Ms. Earll and the courts are beholden to that decision unless and until Congress extends and adapts the ADA to websites like eBay.com.

### A. The ADA makes plain that a business is not a "place of public accommodation" unless it operates a real, physical space.

Title III of the ADA prohibits discrimination against the disabled "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). The text, structure, and context of the Act all demonstrate that an Internet website is not a "place of public accommodation."

At common law, "places of public accommodation" were the subset of businesses that had heightened duties of service because of the public nature of the physical facilities they opened up to the public. Building on those common-law

13

origins, antidiscrimination statutes have used the term for over a century. *See Burks v. Bosso*, 180 N.Y. 341, 345 (1905) ("Inns, hotels and public conveyances are places of public accommodation in the broadest sense, because they have always been denominated as such under the common law"); *Faulkner v. Solazzi*, 64 A. 947, 947–49 (Conn. 1907) (listing common carriers, inns, and utilities as "places of public accommodation"). Over time, antidiscrimination statutes have added to the term's precise common-law meaning, but it never has meant "every business which has a promise of success," *id.* at 949, and typically has connoted a real, physical space open to the public. The Supreme Court thus was puzzled when, not too long ago, New Jersey "went a step further and applied its public accommodations law to a private entity without even attempting to tie the term 'place' to a physical location." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 657 (2000).

The term has appeared in federal antidiscrimination laws since the Civil Rights Act of 1964, 42 U.S.C. § 2000a, *et seq.* (The original Civil Rights Act of 1875, 18 Stat. 335, used the related term "places of public amusement.") The term "place of public accommodation" in Title II of the 1964 Act connotes a concrete facility or establishment, for "to conclude otherwise would obfuscate the term 'place' … ." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 755 (9th Cir. 1994).

14

Title III of the ADA does not depart from its predecessors. It does not apply to every business operating in interstate commerce, but to only a subset. If every business of every sort were "places of public accommodation," Congress would not have written other ADA titles, nor would it have listed specific businesses that qualify as "places of public accommodation." The term also encompasses only businesses with real, physical spaces, a conclusion reinforced by both halves of the term—"place" and "public accommodation."

### 1. "Place"

Whenever Congress does not provide its own definition for a word in a federal statute, courts give the word its ordinary meaning from the time of enactment. *See Perrin v. United States*, 444 U.S. 37, 42 (1979); *see, e.g.*, *Dir., Office of Workers' Compensation Programs v. Greenwich Collieries*, 512 U.S. 267, 272 (1994). That meaning is the one the enacting Congress presumably intended to express and the one the public presumably understood. Congress did not define the word "place" in the ADA, so the word takes its ordinary meaning as of 1990. Dictionaries then defined the word "place" as a real, physical, geographical space. No definitions contemporaneous with the ADA's enactment connoted anything digital, incorporeal, or non-geographical like a website.[1]

---

[1] *See* WEBSTER'S THIRD NEW INT'L DICTIONARY 1727 (1986) (defining "place" as, *inter alia*, a "physical environment: space"; "physical surroundings:
(footnote continued on next page)

15

In other ADA sections, Congress used the word "place" in keeping with that meaning, which bolsters the presumption "that identical words used in different parts of the same act are intended to have the same meaning." *Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932). Two sections refer to specific types of "places"—a "place of lodging," "place of public gathering," "place of recreation," "place of exercise," and "place of worship." 42 U.S.C. §§ 12181(7) & 12187. Those terms cannot include websites because the named activities occur only in real, physical spaces. Hotels.com is not a "place of lodging." An Internet theology forum is not a "place of worship." *See* WEBSTER'S THIRD NEW INT'L DICTIONARY 1727 (1986) (listing "place of worship" as an example of "a building or locality used for a special purpose") (emphases added).

Another ADA provision regulating "examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes" buttresses the conclusion that the word "place" excludes non-physical means of communication likes Internet websites. 42 U.S.C. § 12189. That section distinguishes between offering examinations and courses "in a place … accessible to persons with disabilities"

---

atmosphere"; "an individual dwelling or estate: house, homestead"; "a particular portion of a surface: a specific locality"; and "a public square: plaza") (hereinafter "WEBSTER'S"); RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1478 (2d ed. 1987) (defining "place" as specific or general "spaces" and as a "building, location" or "residence, dwelling, or house") (hereinafter "RANDOM HOUSE").

and offering tests "in a … <u>manner</u> accessible to" them. *Id.* (emphases added). Treating an Internet website as a "place" does not square with this provision:  one would not say that a test offered on an Internet website is being offered in an accessible "place"; rather, it is being offered in an accessible "manner."

That Congress defined the term "public accommodation," 42 U.S.C. § 12181(7), but not the word "place" does not imply that the latter is irrelevant. Statutory "text should not be construed so as to render any of its provisions mere surplusage."  *United States v. Bolanos-Hernandez*, 492 F.3d 1140, 1145 (9th Cir. 2007).  If Congress wanted the word "place" to bear no meaning, it would have dropped the word from the Act.

### 2.    "Public accommodation"

Like the word "place," the term "public accommodation" as defined in Section 12181(7) reaches only real, physical spaces open to the public.  Congress formulated all twelve subparagraphs of Section 12181(7) the same way:  a general residual clause follows a disjunctive list of specific businesses.  *See* 42 U.S.C. § 12181(7)(A)–(L).  Take, for example, the second subparagraph ("a restaurant, bar, or other establishment serving food or drink") and the third ("a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment").  *Id.* §§ 12181(7)(B), (C).

Seven of the twelve residual clauses refer to "other place[s]," four to "other establishment[s]," and one to "other station[s]." Congress evidently thought those words had similar connotations, as one residual clause equates the words "place" and "establishment." *See* 42 U.S.C. § 12181(7)(A) ("an inn, hotel, motel, or other place of lodging, except for an establishment located within a building contains not more than five rooms … .") (emphases added). And rightly so. Just as the word "place" connoted a real, physical space in 1990, so did the words "establishment" and "station."[2] By tying the residual clauses to places, establishments, and stations—instead of writing them simply and unspecifically as "or others"—Congress made clear that the businesses preceding each residual clause are places, establishments, or stations as well. Thus, all "public accommodations" under Title III are real, physical spaces.

---

[2] *See* WEBSTER'S 778 (defining "establishment" as "a more or less fixed and usu. sizable place of business or residence together with all the things that are an essential part of it (as grounds, furniture, fixtures, retinue, employees)" and "a public or private institution (as a school or hospital)"); *id.* at 2229 (defining "station" as various types of real, physical "places" or "locations"); RANDOM HOUSE 663 (defining "establishment" as "a household"; "a place of business together with its furnishings, grounds, etc."; and "an institution, as a school, hospital, etc."); *id.* at 1861 (defining "station" as type of a "place," especially for "trains or other land conveyances").

**B.    The canons of statutory construction confirm that only real, physical spaces can be "places of public accommodation."**

Two related canons of statutory construction reinforce the conclusion drawn from the plain text of Title III.  *Ejusdem generis* teaches that a residual clause should be confined to the characteristics of the specific items listed before it.  *See Hall St. Assocs. v. Mattel*, 552 U.S. 576, 586 (2008); *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114–15 (2001) ("Where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.").  *Ejusdem generis* reflects the common understanding that a catchall at the end of a list shares the same "theme" as the preceding terms. *United States v. Baird*, 85 F.3d 450, 453 (9th Cir. 1996) (quoting *McBoyle v. United States*, 283 U.S. 25 (1931)).

*Noscitur a sociis* is the close cousin of *ejusdem generis*.  It teaches that, whether or not a list has a residual clause, items in the list should be read to share common attributes.  *See S.D. Warren Co. v. Maine Bd. of Env. Prot.*, 547 U.S. 370, 378 (2006); *see also Beecham v. United States*, 511 U.S. 368, 371 (1994) ("That several items in a list share an attribute counsels in favor of interpreting the other items as possessing that attribute as well.").  When a word in a statutory list has multiple different meanings, that word takes the meaning most similar to the other words' meanings.  *See, e.g.*, *United States v. Kimsey*, 668 F.3d 691, 701–02 (9th

Cir. 2012) (interpreting the word "rule" in the Clayton Act not to include standing rules of procedure because the other words in the Act refer "to a court's directive to specific persons in a particular case").

Both canons apply to each subparagraph in Section 12181(7), and *noscitur a sociis* also applies to Section 12181(7) as a whole, since the twelve subparagraphs together constitute one statutory list. Reading Section 12181(7) in light of the canons, this Court held that "[a]ll the items on the list … have something in common. They are actual, physical places … ." *Weyer*, 198 F.3d at 1114; *see Parker*, 121 F.3d at 1014 (reaching the same conclusion via *noscitur a sociis*); *see also Ford*, 145 F.3d at 614 (same). To state a claim under Title III, then, "some connection between the good or service complained of and an actual physical place is required." *Weyer*, 198 F.3d at 1114.

### C. Ms. Earll's interpretation of the ADA violates fundamental rules of statutory interpretation.

Ms. Earll's approach to Title III turns familiar rules of statutory interpretation upside-down. Neglecting the ordinary meaning of the relevant words, she contends that, because Congress drafted no exceptions to the list of "public accommodations" in the ADA, the ADA is broad—at least broad enough for her claim. Title III applies to websites like eBay.com, she continues, because Congress did not expressly exclude them. *See* Earll Br. 5, 9, 12.

20

That a statute may be broad does not make it unlimited, and the breadth of a statute depends on the breadth of the words Congress used, not the number of exceptions it drafted. The question is what the statute <u>says</u>, not what it <u>omits</u>. The ADA has no exception for websites like eBay.com because the words Congress used do not reach those websites in the first place.

Contending that items in a list should be linked by only their broadest shared characteristic, Ms. Earll notes that all entities listed in Section 12181(7) are "entities that offer goods and services to the public." Earll Br. 18. That is no link at all, for it restates other statutory requirements and impermissibly renders them superfluous. *See* 42 U.S.C. § 12181(7) (a covered entity must "affect interstate commerce"); *id.* § 12182(a) (a covered entity must offer "goods, services, facilities, privileges, or advantages"). Ms. Earll's contention also impermissibly transforms the canons of <u>limitation</u> into canons of <u>expansion</u>. *See Gooch v. United States*, 297 U.S. 124, 128 (1936) (*ejusdem generis* "limits general terms"); *Jarecki v. G.D. Searle Co.*, 367 U.S. 303, 307 (1961) (*noscitur a sociis* "avoid[s] the giving of unintended breadth to the Acts of Congress"). A court looks for "the most relevant common attribute," not the broadest. *James v. United States*, 550 U.S. 192, 199 (2007).

Ms. Earll misreads *Ali v. Federal Bureau of Prisons*, 552 U.S. 214 (2008), as supporting her view that the canons of construction require the Court to link

items on a statutory list by their broadest shared characteristic. *See* Earll Br. 18. The portion of *Ali* she blockquotes is taken out of context. The *Ali* Court did not invoke the canons to reject a narrow interpretation of a residual clause in favor of a broader one, as Ms. Earll implies. It declined to apply *ejusdem generis* because the residual clause at issue was preceded by just one item, not a list; thus, the Court could not ascertain <u>any</u> common attribute among items in a list, let alone the most relevant. *See Ali*, 552 U.S. at 224–25.

Ms. Earll tries to squeeze eBay.com into the "public accommodations" enumerated in Section 12181(7). She contends that it is a "place of public gathering" per subparagraph (D). *See* Earll Br. 9. Even if it could be said that individuals viewing and interacting with eBay.com from their homes, workplaces, schools, or elsewhere are "public[ly] gathering," her contention fails because a website is not a "place" under the ADA. What's more, subparagraph (D) does not reach "place[s] of public gathering" *simpliciter*. It reaches "<u>other</u> place[s] of public gathering." 42 U.S.C. § 12181(7)(D) (emphasis added). By *ejusdem generis*, eBay.com does not fit within that residual clause because it is not a real, physical space like "an auditorium, convention center, [or] lecture hall." *Id.*

Ms. Earll contends that eBay.com is a "clothing store, hardware store, shopping center, or other sales or rental establishment" per subparagraph (E) because clothes, hardware, and more are sold through the website. *See* Earll Br. 9,

22

19–20.  Selling goods is necessary, but not sufficient, for a business to fit within subparagraph (E).  Someone hosting a garage sale or posting a classified ad in a newspaper is not a "clothing store" or "hardware store" by virtue of offering to sell old clothes and used hardware.  Like "establishments," "stores" and "shopping centers" under the ADA are real, physical spaces; indeed, the dictionary definitions of those words are built on the word "establishment."[3]  Websites, by contrast, are not "physical, concrete structures" and thus are not "establishments," "stores," or "shopping centers" under the ADA.  *Access Now, Inc. v. Southwest Airlines Co.*, 227 F. Supp. 2d 1312, 1319 (S.D. Fla. 2002).

## D.   *Weyer* **is on-point, remains correct, and should not be overruled.**

Noting that the Court in *Weyer* did not mention the Internet or websites within the four corners of its opinion, Ms. Earll urges this Court to distinguish *Weyer* as limited to the question whether Title III of the ADA applies to an employee's acquisition of employer-sponsored insurance.  *See* Earll Br. 16.  Yet in reasoning that Title III requires "some connection between the good or service

---

[3]   *See* WEBSTER'S 2252 (defining "store" as "a business <u>establishment</u> where good are kept for retail sale … a commercial <u>establishment</u> … a building, room, or suite of rooms occupied by or suitable for occupancy by a store") (emphases added); *id.* at 2101 (defining "shopping center" as "a concentration or retail <u>stores</u> and service <u>establishments</u> in a suburban area usu. with generous parking space and usu. planned to serve a community or neighborhood") (emphases added); RANDOM HOUSE 1877 (defining "store" as an "establishment"); *id.* at 1769 (defining "shopping center" as "a group of stores within a single architectural plan, supplying most of the basic shopping needs, esp. in suburban areas").

complained of and an actual physical place," *Weyer* made no mention of insurance. *Weyer*, 198 F.3d at 1114. The Court simply read and interpreted the statute. That *Weyer* applied its interpretation to a dispute about insurance does not allow this Court to adopt a different interpretation to apply to this dispute about websites. The meaning of a statute does not change in different factual contexts. *See Clark v. Martinez*, 543 U.S. 371, 386 (2005) (rejecting "the dangerous principle that judges can give the same statutory text different meanings in different cases").

*Weyer*'s interpretation of the term "public accommodation" was not dictum, either. *See* Earll Br. 17. The Court actually applied its interpretation in reaching the outcome. *See* BLACK'S LAW DICTIONARY 905 (abr. 8th ed. 2005) (defining "dictum"). Ms. Earll notes the Court's statement that statutory context "suggests" a nexus with a physical space rather than "requires" or "demands" it. *See* Earll Br. 17. Whether a statement in a judicial opinion is precedential or dictum does not depend on something as trivial as the Court's choice among verbs; it depends on whether the Court applied the statement to the facts. *See, e.g.*, *Best Life Assur. Co. v. Comm'r of Internal Revenue*, 281 F.3d 828, 834 (9th Cir. 2002). Besides, courts routinely render authoritative statutory interpretations when "context suggests" one interpretation over another. *See, e.g.*, *Taniguchi v. Kan Pac. Saipan*, 132 S. Ct. 1997, 2004 (2012) ("Nothing in [the statute] even hints that Congress intended to go beyond the ordinary meaning … and to embrace the broadest

possible meaning that the definition of the word can bear. If anything, the statutory context suggests the opposite … .").

Ms. Earll contends that *Weyer*'s interpretation of the ADA is dictum because it "can be deleted without affecting the argument." Earll Br. 17. Not so. To delete *Weyer*'s discussion—which includes the Court's reading of the ADA's plain text, its application of the rules of statutory interpretation, and lengthy quotes of the Third and Sixth Circuits' identical holdings, *see Weyer*, 198 F.3d at 1114–15— would leave behind nothing but the bare conclusion that Mrs. Weyer had not stated a claim under Title III. That is not lost on Ms. Earll. So, in addition to cutting the two pages of *Weyer* she dislikes, she proposes pasting in a new argument she prefers—to wit, that an insurance contract is "merely a document" and therefore not a place of public accommodation. Earll Br. 17. If her proposed rescission requires the Court to rewrite *Weyer*'s reasoning, the stricken portions are not dicta. Ms. Earll's revision would bar her claim, in any event. The website she claims she could not access, like the contract that Mrs. Weyer claimed she could not access, is "merely a document," albeit an electronic one.

There also is compelling circumstantial evidence, if any were needed, that *Weyer* is not dictum. No court has said so. And this Court has followed *Weyer* as binding. *See Stern v. Sony Corp. of Am.*, 459 Fed. Appx. 609, 610–11 (9th Cir. 2011) (citing *Weyer* and holding that a "video game is not a facility, and Stern has

failed to allege a sufficient connection between Sony's video games and a facility owned, leased, or operated by Sony"); *see also Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1047 (9th Cir. 2000) ("We found [in *Weyer*] that the term 'place of public accommodation' required a connection between the good or service complained of and an actual physical place.").

Ms. Earll's criticisms of *Weyer* are hypocritical. After minimizing *Weyer* as an insurance case, she urges the Court to follow an insurance case from the First Circuit. *See* Earll Br. 20 (discussing *Carparts Distrib. Ctr. v. Auto. Wholesaler's Ass'n of New England*, 37 F.3d 12 (1st Cir. 1994)). And after mischaracterizing *Weyer* as dictum, she urges the Court to follow a statement by Judge Posner that other courts recognize as dictum. *See* Earll Br. 21 (citing *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999)); *see also Access Now*, 227 F. Supp. 2d at 1319 n.9 (calling the *Doe* statement dictum); *Noah v. AOL Time Warner Inc.*, 261 F. Supp. 2d 532, 544 n.11 (E.D. Va. 2003) (same); *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 952 (N.D. Cal. 2006) (same).

The opinions Ms. Earll prefers are unpersuasive. Without applying the canons of construction or consulting a dictionary, the First Circuit erroneously asserted that the "plain meaning" of the "service establishments" listed in Section 12181(7)(F) did not require "physical structures for persons to enter." *Carparts*, 37 F.3d at 19. *Weyer* reached the exact opposite conclusion.

26

The First Circuit also admitted it was driven by policy more than statutory text. Citing a hodgepodge of legislative statements, the court opined that distinguishing between businesses operating real, physical spaces and businesses conducting commerce by other means (as by mail or phone) would be "irrational" and "absurd." *Id.* at 19, 20. In so finding, the First Circuit traded its policy judgment for Congress's. Consistent with a tradition dating back to common law and reflected in many antidiscrimination statutes, Congress decided to root out discrimination against the disabled only in a subset of businesses—those with real, physical spaces open to the public. "Congress has the authority to improve the circumstances of disabled people in some respects even if it does not improve them in all respects." *Weyer*, 198 F.3d at 1112; *cf. McNeil v. Time Ins. Co.*, 205 F.3d 179, 186 (5th Cir. 2000) (rejecting a request to "read the [ADA] expansively in the light of the purpose of the statute"). Title III treats web-only businesses the same way it treats other businesses that do not open a physical space to the public. All are outside its scope.

The other circuit court opinions Ms. Earll cites are unhelpful to her cause. Judge Posner's statement that Title III applies to websites is unreasoned *ipse dixit*, which is why, as noted above, his statement is dictum. *See Doe*, 179 F.3d at 559. The Second Circuit addressed a different question in *Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28 (2d Cir 1999). There, the question was what counts as

discrimination against the disabled—whether the ADA prohibits only the denial of physical access or whether it also prohibits refusing to sell products to the disabled. *Id.* at 32–33. The Second Circuit noted that it was not deciding whether a covered "public accommodation" must have a physical location. *See id.* at 32 n.3; *see also Rendon v. Valleycrest Prods. Ltd.*, 294 F.3d 1279, 1283–86 & n.8 (11th Cir. 2002) (holding that the ADA prohibits a theatre to condition entry on making a phone call from one's home because unlawful discrimination need not occur on site).

Ms. Earll provides no good reason for the Court to repudiate *Weyer* even if the panel could. *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc) ("[A] three-judge panel may not overrule a prior decision of the court."). *Weyer* is no outlier. A number of federal courts, set out in the footnote below, have reached the same or similar conclusion upon reading the plain text of Title III of the ADA. Several of those decisions involved technology (like the Internet) that allows a business to provide goods and services to a person in his or her home.[4]

---

[4] *See Parker*, 121 F.3d at 1010 (cited in *Weyer*); *Ford*, 145 F.3d at 614 (same); *see also Stoutenborough v. Nat'l Football League, Inc.*, 59 F.3d 580, 583 (6th Cir. 1995) (rejecting a challenge to the NFL's decision not to broadcast local football games because "the prohibitions of Title III are restricted to 'places' of public accommodation, disqualifying the National Football League, its member clubs, and the media defendants"); *Torres v. AT&T Broadband, LLC*, 158 F. Supp. 2d 1035, 1037 (N.D. Cal. 2001) ("The plaintiff's contention that digital cable services constitute a place of public accommodation is contrary to the plain language of the statute and its implementing regulations. … [N]either the digital cable system nor its on-screen channel menu can be considered a place of
(footnote continued on next page)

28

### E. Ms. Earll's policy arguments are unfounded and irrelevant.

In support of her position that Title III of the ADA should apply to Internet websites of web-only businesses, Ms. Earll cherry-picks legislative and regulatory statements that do not even support her position. Because Title III is plainly limited to real, physical spaces, looking to those extra-statutory statements is unnecessary. *See Ford*, 145 F.3d at 613.

The legislative history at most reveals that some senators and representatives had broad antidiscrimination goals. It does not prove that Congress pursued those goals to the very limits of its interstate commerce power or even to the Internet. Ms. Earll quotes a Senate report that recommends construing the ADA's residual clauses "liberally." *See* Earll Br. 11 (quoting S. Rep. No. 116 at 59 (1989)). The

---

public accommodation within the meaning of the ADA."); *Access Now*, 227 F. Supp. 2d at 1318 (rejecting challenge to access southwest.com because "to fall within the scope of the ADA as presently drafted, a public accommodation must be a physical, concrete structure"); *Target*, 452 F. Supp. 2d at 953 ("To the extent that Target.com offers information and services unconnected to Target stores, which do not affect the enjoyment of goods and services offered in Target stores, the plaintiffs fail to state a claim under Title III of the ADA."); *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1116 (N.D. Cal. 2011) ("Facebook's internet services thus do not have a nexus to a physical place of public accommodation for which Facebook may be liable under the statute."); c*f. Noah*, 261 F. Supp. 2d at 544 (Title II of Civil Rights Act) ("In sum, whether one relies on the Title II case law or looks to the broader ADA definition of public place of accommodation, it is clear that the logic of the statute and the weight of authority indicate that 'places of entertainment' must be actual physical facilities. ... [A]lthough a chat room or other online forum might be referred to metaphorically as a 'location' or 'place,' it lacks the physical presence necessary to constitute a place of public accommodation under Title II.").

clauses addressed in the report are quite different from those Congress enacted, though, and even if they had been enacted, Congress's request that courts interpret a statute liberally is not a license to ignore plain language. *See, e.g.*, *Navajo Nation v. Dep't Health & Human Servs.*, 325 F.3d 1133, 1140–41 (9th Cir. 2003). Ms. Earll reads a House report as confirming her view that any entity selling items to the public is a "public accommodation." *See* Earll Br. 10–11. The report suggests, however, only that a jewelry <u>store</u> (not listed in the statute) should be treated like a clothing <u>store</u> (listed) because it "falls within the overall category," namely, "other sales or rental <u>establishment</u>[s]." *See* H.R. Rep. No. 101-485, pt. 3, at 54 (1990) (emphasis added), *reprinted in* 1990 U.S.C.C.A.N. 445, 477. In other words, the report evidences Congress's intent to apply the ADA to all sorts of real, physical spaces open to the public. Ms. Earll contends that Congress intended for the ADA to cover new technology, but the statements she quotes address assistive and adaptive technology in the context of reasonable accommodations, not what counts as a "place of public accommodation." *See* Earll Br. 11–12 (quoting H.R. Rep. No. 101-485, pt. 2, at 108 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 391).

The Department of Justice's ADA regulations do not embrace Ms. Earll's position, either. They limit the ADA to entities operating real, physical spaces, as this Court has noted. *See Stern*, 459 Fed. Appx. at 610–11. In those regulations, the term "place of public accommodation" is defined as a "facility," and a

"facility" includes "buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property."  28 C.F.R. § 36.104.

In nonbinding statements, like letters and notices of proposed rulemaking, DOJ has expressed a belief that Title III applies to (some) websites.  Those nonbinding agency opinions "do not warrant *Chevron*-style deference." *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000); *see Ariz. ex rel. Goddard v. Harkins Amusement*, 603 F.3d 666, 674 (9th Cir. 2010) (interpretations in notices of proposed rulemaking).  They also are not entirely consistent with Ms. Earll's view.  For instance, in response to public comments asking DOJ to apply Title III to websites "regardless of whether or not these entities have a 'bricks and mortar' location," DOJ responded that Title III "covers access to Web sites <u>of public accommodations</u>."  Earll Br. 14–15 (quoting 28 C.F.R. pt. 36, App. A, at 816 (2011)) (emphasis added).  DOJ's response did not endorse the commenters' view, as Ms. Earll asserts.  *See id.* at 15 & n.1.  Websites "of" public accommodations are websites of businesses with real, physical locations open to the public.  Such a website arguably may come within the ambit of Title III if it impedes a disabled person's enjoyment of the goods and services offered in the physical location or if the website is itself a "service," "privilege," or "advantage" of the place of public accommodation.  This distinction—between websites of web-only businesses and

websites of brick-and-mortar businesses—is one courts have accepted. *See Target*, 452 F. Supp. 2d at 953 (distinguishing between websites of web-only businesses and websites of brick-and-mortar businesses); *cf. Parker*, 121 F.3d at 1011 n.3 (expressing "no opinion as to whether a plaintiff must physically enter a public accommodation to bring suit under Title III as opposed to merely accessing, by some other means, a service or good provided by public accommodation").

Ms. Earll also points to an amicus brief DOJ filed thirteen years ago, wherein DOJ argued that a web-only gaming business was a "service establishment" per Section 12181(7)(F). *See* Earll Br. at 15 n.1 (citing Amicus Brief of U.S., *Hooks v. OKBridge, Inc.*, No. 99-50891 (5th Cir.) (filed June 30, 2000), *available at* http://www.justice.gov/crt/about/app/briefs/hooks.pdf ("Hooks Br.")).[5] That position deserves no deference for at least four reasons. First, statutory interpretations articulated in briefs are not worthy of deference. *See Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 829–31 (9th Cir. 2012) (explaining why not to accord *Chevron* deference to statutory interpretations advanced in litigation); *see also id.* at 843 (O'Scannlain, J., concurring in part and dissenting in part) (agreeing). Second, that position is inconsistent with DOJ's own regulations and other nonbinding statements. Third, it contradicts the plain

---

[5]    The Fifth Circuit affirmed without addressing DOJ's positions. *See Hooks v. OKBridge, Inc.*, 2000 WL 1272847, *1 (5th Cir.).

language of Title III. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). <u>Fourth</u>, as DOJ acknowledged, *see* Hooks Br. 12–13, it contradicts *Weyer*'s interpretation of Title III's plain language. *See Nat'l Cable & Telec. Assn. v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005) (recognizing that "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference" when "the prior court decision holds that its construction follows from the unambiguous terms of the statute.").

Ms. Earll's effort to rewrite the ADA in accordance with her policy views must fail. If courts "were to 'fully effectuate' what [they] take to be the underlying policy of the legislation, without careful attention to the qualifying words in the statute, then [they] would be overturning the nuanced compromise in the legislation, and substituting [their] own cruder, less responsive mandate for the law that was actually passed." *Weyer*, 198 F.3d at 1113. The Internet is more significant now than most could have imagined in 1990, and viewing websites has become an alternative to traveling to places of public accommodation for many Americans. But those facts do not warrant judicial revision of the ADA.

Every tool of statutory construction confirms that Congress decided to limit Title III to real, physical spaces open to the public. Far from being accidental or irrational, such a limitation is consistent with limitations the term "place of public

accommodation" has had since common law. If and when Congress perceives a need to extend accommodation mandates like Title III to web-only businesses, it alone must weigh the costs and benefits of regulation and tailor the standards and remedies to the unique circumstances of the Internet. *See Access Now*, 227 F. Supp. 2d at 1321 n.13. This Court should reject Ms. Earll's invitation to supplant Congress's role.

## II. The DPA Does Not Provide A Cause Of Action For A Plaintiff Complaining That She Was Unable To Access The Internet Website Of A Web-Only Business.

### A. Internet websites are not "places" to which the DPA applies.

Ms. Earll misbelieves there is no dispute "that the DPA applies to web-only businesses." Earll Br. 25 n.5. eBay pressed the point below and never conceded it, and the district court's holding that the DPA applies to eBay.com is wrong.

Originally enacted in 1968, the words in the DPA foreshadowed the words Congress used in the ADA two decades later. The DPA guarantees the disabled full and equal access to "accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, and privileges" of a laundry list of businesses:

> all common carriers, airplanes, motor vehicles, railroad trains, motorbuses, streetcars, boats, or any other public conveyances or modes of transportation (whether private, public, franchised, licensed, contracted, or otherwise provided), telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public

> accommodation, amusement, or resort, and other places
> to which the general public is invited.

Cal. Civ. Code § 54.1(a)(1).

The same basic textual analysis this Court applied to the ADA in *Weyer* applies to the DPA. Because all but one of the businesses listed in the DPA have no statutory definition (more on that one, below), the Court looks to the words' ordinary meanings. *See Pineda v. Williams-Sonoma Stores, Inc.*, 246 P.3d 612, 615–16 (Cal. 2011). A "place of public accommodation, amusement, or resort" and the "other places to which the general public is invited" are, first and foremost, places. The connotations of the word "place" did not change between 1968 and 1990. *See* WEBSTER'S THIRD NEW INT'L DICTIONARY 1727 (unabr. 1961). The businesses listed in the DPA are all physical facilities or transportation vehicles, so by *noscitur a sociis* and *ejusdem generis*, each term and the residual clause ("other places to which the general public is invited") have that connotation.

Section 54.1(c) shows the legislature's belief that all places covered by Section 54.1(a)(1) were real, physical spaces. Subsection (c) ensures the right to "take [helper] dogs … in any of the places specified in [Section 54.1(a) and (b)]," so long as the dog is tagged and leashed, and Subsection (c) makes a handler "liable for any provable damage done to the premises or facilities by his or her dog." Cal. Civ. Code § 54.1(c). Subsection (c) makes no sense as applied to Internet websites: no dog, let alone one tagged or leashed, can be "take[n] in" a

35

website. The words Subsection (c) uses to refer to Subsection (a)—"places," "premises," and "facilities"—all connote real, physical spaces as well. Other DPA provisions have the same import. *See, e.g.*, *id.* § 54.2(a) ("in <u>any</u> of the <u>places</u> specified in Section 54.1") (emphases added); *id.* § 54.3 ("public <u>facilities</u> as specified in Sections 54 and 54.1") (emphasis added); *id.* § 54.4 ("in <u>any</u> of the <u>places, accommodations, or conveyances specified in Sections 54 and 54.1</u>") (emphases added).

DPA provisions that apply to new technology are explicit. Section 52.6 requires the California Department of Justice to post information "on the department's Internet Web site." Cal. Civ. Code § 52.6(d). Section 54.9 sets detailed accessibility standards for "touch-screen devices used for the purpose of self-service check-in at a hotel or at a facility providing passenger transportation services." Cal. Civ. Code § 54.9(a)–(b). No provision in the DPA sets accessibility standards for Internet websites, though the legislature has done so in other statutes. *See* Cal. Civ. Code § 1936.01(b)(3)(A) (setting typeface requirements for information provided by rental companies on their Internet websites and limiting the number of clicks before such information is displayed).

In holding that the DPA applies to eBay.com, the district court did not examine the DPA's text or structure but cited only one lower court opinion, *Target*, holding that the DPA applies to websites. ER 19 (citing *Nat'l Fed'n of Blind v.*

*Target Corp.*, 582 F. Supp. 2d 1185, 1196 (N.D. Cal. 2007)).  That opinion is unpersuasive.  For one, the *Target* court erroneously assumed that the language in the DPA's residual clause is "broader" than the language in the ADA. 582 F. Supp. 2d at 1198.  The *Target* court overlooked that the word "place" sets the bounds of both statutes; it appears in the DPA's residual clause and in multiple ADA provisions.  The *Target* court also patently misread the DPA, writing that "among the 'places' enumerated in the DPA is entitlement to 'advantages,' which clearly is not affixed to any particular physical location."  *Id.*  The court missed an intervening word—"of"—that affixes the word "advantages" to the real, physical places listed in Section 54.1(a)(1).

The *Target* court placed great weight on the DPA's reference to "telephone facilities."  *See* 582 F. Supp. 2d at 1198.  The term "telephone facilities" does not encompass Internet websites, though.  The DPA defines the term as "tariff items and other equipment and service that have been approved by the Public Utilities Commission to be used by individuals with disabilities in a manner feasible and compatible with the existing telephone network."  Cal. Civ. Code § 54.1(a)(2).

Reasoning that "telephone facilities" include "non-physical places," the *Target* court believed it had to ignore the canons of construction and read the DPA's residual clause to encompass Internet websites.  *See* 582 F. Supp. 2d at 1198.  That, too, was wrong.  "Telephone facilities" include only real, physical

spaces. The Public Utilities Commission's obligation to "mak[e] available reasonable access of all phases of public telephone service to individuals who are deaf or hearing impaired" is tethered to "existing buildings, structures, facilities, and public accommodations," *i.e.*, real, physical spaces. Cal. Pub. Util. Code § 2881.2. Yet, even assuming the term "telephone facilities" could be read to reach "non-physical places," the canons of construction cannot be ignored. A term with multiple meanings or connotations is the ideal subject for *ejusdem generis* and *noscitur a sociis*, which demand that the term take the meaning or connotation most like that of the other terms listed with it. Since every other word in Section 54.1(a)(1) connotes real, physical spaces, "telephone facilities" and the residual clause include only real, physical spaces as well.

The inapplicability of the DPA to eBay.com is an independent and adequate reason to uphold the district court's dismissal of Ms. Earll's DPA claim.

## B. Ms. Earll identified no applicable website accessibility standards.

Even if the DPA applies to eBay.com, the district court was right to dismiss her DPA claim. Because she has no claim under the ADA, *see* Cal. Civ. Code § 54.1(d), her DPA claim can proceed only if eBay denied her "full and equal access … subject only to the conditions and limitations established by law, or state or federal regulation," *id.* § 54.1(a)(1). A long line of state (and federal) cases holds that Section 54.1(a)(1) simply requires compliance with applicable

accessibility standards—it imposes no substantive standards of its own. Because, as Ms. Earll concedes, no applicable website accessibility standard exists, ER 45, the district court correctly dismissed her DPA claim.

The line of cases begins with *Marsh v. Edwards Theatres Circuit, Inc.*, 134 Cal. Rptr. 844 (Cal. Ct. App. 1976), in which a wheelchair-bound patron sued a theatre for refusing to let him watch a movie from an aisle. The court held

> that the operator of a business of a type enumerated in Civil Code section 54.1 is not required by the force of that section alone to modify its facilities to allow for their use by handicapped persons. That statute requires only that the operator open its doors on an equal basis to all that can avail themselves of the facilities without violation of other valid laws and regulations.

*Id.* at 850 (emphasis in original); *see id.* at 847 (stating that the DPA does not "require the operator of such accommodations, absent specific legislation mandating it, to make structural modifications in order to facilitate access"). Section 54.1(a) does "not impose affirmative duties of the type which plaintiff seeks to impose," *id.* at 848, because its language is general and because it "excepts from its interdiction, limitations or conditions of access based on laws or regulations applicable to all persons," *id.* at 849. Legislatures, not courts, must define the specific duties proprietors owe disabled patrons. *See id.* at 848.

Later decisions reached the same conclusion. One observed that the legislature enacted specific accessibility requirements in other statutes in order

39

"[t]o give meaning to" Section 54.1(a). *People ex rel. Deukmejian v. CHE, Inc.*, 197 Cal. Rptr. 484, 490 (Cal. Ct. App.1983). Discussing *Marsh* at length and concluding that Section 54.1(a) requires "look[ing] to other provisions of law," another concluded that the legislature must have agreed with *Marsh*'s holding on accessibility standards because it left that holding intact when overruling *Marsh*'s separate holding on the availability of damages. *See Coronado v. Cobblestone Vill. Comm. Rentals*, 77 Cal. Rptr. 3d 883, 893–94 (Cal. Ct. App. 2008) (emphasis in original).

Ignoring the precedents, Ms. Earll cites only Section 54.1(a)(3). According to that provision, "'[f]ull and equal access,' for purposes of this section in its application to transportation, means access that meets the standards" of the ADA and related regulations, "except that, if the laws of this state prescribe higher standards, it shall mean access that meets those higher standards." Cal. Civ. Code § 54.1(a)(3). In Ms. Earll's view, Section 54.1(a)(3) links DPA liability with accessibility standards only in transportation contexts. *See* Earll Br. 26–31.

That contention lacks merit. Section 54.1(a)(3) neither changed the text of Section 54.1(a)(1) nor overruled *Marsh* and its progeny *sub silentio*. *See Merrill v. Navegar, Inc.*, 28 P.3d 116, 130 (Cal. 2001) (disfavoring implied repeals unless two provisions cannot be reconciled). Section 54.1(a)(1) still guarantees "full and equal access" to covered places "subject only to the conditions and limitations

established by law, or state or federal regulation, and applicable alike to all persons." Cal. Civ. Code § 54.1(a)(1). Section 54.1(a)(3) merely clarifies that accessibility standards adopted pursuant to the ADA control in transportation contexts (to the exclusion of other federal laws and regulations) unless California standards are higher. In other contexts, a plaintiff still must identify accessibility standards, which may be local, state, or federal (either the ADA or another federal statute). Put differently, a DPA claim in a transportation case is governed solely by the ADA and higher California accessibility standards, while in other contexts, a DPA claim can be based on any applicable federal or state standard. Section 54.1(a)(3) is not a "dead letter." Earll Br. 30; *see id.* at 26–27.

It is no wonder that Ms. Earll does not cite a single decision interpreting Section 54.1(a)(3) her way. Like the district court below, ER 19, many courts recognize that Section 54.1(a)(3) is simply a transportation-specific application of the DPA's general requirement to look to other provisions of law for substantive accessibility standards. The general requirement never has been limited to transportation contexts. *See, e.g.*, *Californians for Disability Rights v. Mervyn's LLC*, 81 Cal. Rptr. 3d 144, 147 (Cal. Ct. App. 2008) (retail department stores' aisles); *Coronado*, 77 Cal. Rptr. 3d at 886–87 (apartment building); *Donald v. Sacramento Valley Bank*, 260 Cal. Rptr. 49, 50 (Cal Ct. App. 1989) (bank ATMs); *Deukmejian*, 197 Cal. Rptr. at 486 (restaurants). Most courts—including this

41

one—just delete the reference to "transportation" when quoting Section 54.1(a)(3). *See Bass v. County of Butte*, 458 F.3d 978, 980 n.3 (9th Cir. 2006); *see also Reycraft v. Lee*, 99 Cal. Rptr. 3d 746, 748–49 (Cal. Ct. App. 2009); *Target*, 582 F. Supp. 2d at 1207; *Urhausen v. Longs Drug Stores Cal.*, 65 Cal. Rptr. 3d 838, 842–43 (Cal. Ct. App. 2007).

Ms. Earll resorts to boot-strapping to save her DPA claim. She argues that the DPA must prescribe accessibility standards for websites because it applies to websites. *See* Earll Br. 28–29. But even if the DPA applied to websites, it would create liability only to the extent a website violated applicable accessibility standards. Ms. Earll similarly argues that the Unruh Act must prescribe accessibility standards for websites because it applies to websites. *See id.* at 31–32. But, absent a valid ADA claim, the Unruh Act prohibits only intentional discrimination; it does not prescribe substantive accessibility standards. In all events, neither of Ms. Earll's last-ditch arguments overcomes her concession below that there are no applicable accessibility standards for websites. *See* ER 45.

## III. Ms. Earll Did Not State An Unruh Act Claim.

### A. Ms. Earll must plead and prove intentional discrimination.

Contending that courts are confused over whether the Unruh Act prohibits disparate treatment of the disabled as well as practices with a disparate impact on them, Ms. Earll argues that the more expansive view is better. *See* Earll Br. 32–36.

Not only is there no confusion; the case law also clearly repudiates Ms. Earll's argument that eBay's intent is irrelevant to her Unruh Act claim.

In *Harris v. Capital Growth Investors XIV*, 805 P.2d 873 (Cal. 1991), the California Supreme Court held that proof of intentional discrimination is necessary to establish a violation of the Unruh Act. *See id.* at 874–75. A year later, the legislature added Section 51(f), which provides that a violation of the ADA "shall also constitute a violation of this section." Cal. Civ. Code § 51(f). Some confusion arose because intent is immaterial under the ADA, and at least one state court held that Section 51(f) covered only intentional violations of the ADA. Recently, the California Supreme Court clarified that an Unruh Act claim based on an ADA violation needs no proof of intentional discrimination. *See Munson v. Del Taco*, 208 P.3d 623, 625 (Cal. 2009).

Ms. Earll argues that Section 51(f) impliedly repealed the intent requirement for all Unruh Act claims, whether or not premised on an ADA violation, and that *Munson* failed to address that issue. *See* Earll Br. 32–34. She is wrong on both counts. *Harris* inferred an intent requirement from the text and structure of many parts of the Unruh Act, as well as its history and relationship to other statutes. *See Munson*, 208 P.3d at 627 (discussing *Harris*). Section 51(f) changed none of those things, and it did not overrule *Harris*. Its sole "effect was to create an <u>exception</u> to *Harris*'s holding." *Id.* at 630 (emphasis added).

43

The narrower reading of Section 51(f) is consistent with the provision's purpose and effect. The legislature specifically intended Section 51(f) to give persons with ADA claims access to the Unruh Act's remedies, which are broader than the ADA's. *See id.* at 628–31. To do that, the legislature did not need to alter the way in which other Unruh Act claims are proved. That would have been a major change, as Unruh Act claims can be based on discrimination against the disabled, a racial group, a religion, and more. More simply, the legislature put "all ADA violations … in the category of 'discrimination' contrary to section 51" without redefining the entire category. *Id.* at 630.

Contrary to Ms. Earll's contention, this Court did not resolve this issue in her favor in *Davis v. Patel*, 2013 WL 427740, *1 (9th Cir. Jan. 10, 2013). *See* Earll Br. 34. The *Davis* plaintiff's Unruh Act claim was based on an ADA violation. *See Davis*, 2013 WL 427740 at *1. *Davis*, moreover, did not even cite *Munson*, and the one case it did cite reserved the question whether Section 51(f) overruled *Harris*. *See Lentini v. Cal. Ctr. for the Arts*, 370 F.3d 837, 847 (9th Cir. 2004) ("We find that, regardless of whether *Harris* may continue to have relevance to other Unruh Act suits, no showing of intentional discrimination is required where the Unruh Act violation is premised on an ADA violation.") (emphasis added); *see also id.* ("[I]nsofar as the appellants violated the ADA, a showing of

intentional discrimination was not required in order to award damages under the Unruh Act.") (emphasis added).

Since Ms. Earll has no ADA claim, her Unruh Act claim can proceed only with proof of intentional discrimination. As explained below, Ms. Earll did not plead facts that plausibly suggest that eBay intentionally discriminated against her.

**B.     Ms. Earll did not plead intentional discrimination.**

Across her three complaints, Ms. Earll did not sufficiently plead that eBay refused to register her because of her deafness. The ever-changing allegations in those complaints complicate appellate review of her Unruh Act claim. For instance, Ms. Earll deleted factual allegations—presumably true and not pleaded in violation of Rule 11—that eBay's customer services representatives tried to help her. *Compare* ER 5–6 (proposed first amended complaint) *with id.* at 27–28 (actual first amended complaint). Yet even considering just her stripped-down second amended complaint, Ms. Earll's nonconclusory, factual allegations show, at most, that eBay's alleged seller-registration practice had a disparate impact on the deaf.

Since the *Iqbal* and *Twombly* revolution, pleading standards have become back-of-the-hand familiar. First, the Court ignores "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"; then, the Court evaluates whether the remaining "well-pleaded factual allegations …

45

plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

On appeal, Ms. Earll does not object that the district court dispatched many of her allegations on eBay's intent as conclusory. *See* ER 20; *see also id.* at 7, 29, 55–56. Aside from quibbling with the court's harmless use of the phrase "firmly connect" instead of "plausibly suggest," Earll Br. 42, Ms. Earll mainly objects to the court's determination that it could not infer intentional discrimination from her other allegations. Discriminatory intent can be inferred from a facially <u>discriminatory</u> policy, but Ms. Earll did not allege one. She alleged a facially <u>neutral</u> policy—all prospective sellers had to verify by telephone, *see* ER 50—that had, at most, a disparate impact on the deaf. A disparate impact does not violate the Unruh Act. *See Koebke v. Bernardo Heights Country Club*, 115 P.3d 1212, 1228–29 (Cal. 2005).

So to avoid dismissal, Ms. Earll "present[s], in essence, an argument for presuming the [defendant's] discriminatory intent by way of evidence of disparate impact." *Moss v. United States Secret Serv.*, 572 F.3d 962, 971 (9th Cir. 2009). Her allegations fall into three categories, none of which is sufficient: (1) allegations about her back-and-forth with eBay employees, which show that she gave eBay a chance to make an exception for her, *see* Earll Br. 38; (2) allegations that eBay maintained its policy despite her complaints and lawsuit,

*see id.* at 40; and (3) allegations that alternative verification measures were "readily available," *see id.* at 40–41. In Ms. Earll's view, once she notified eBay of its policy's impact on her, eBay's failure to make a special exemption for her suggests discriminatory intent or irrationality. *See id.* at 39, 41.

Ms. Earll's factual allegations do not show that the disparate impact on her was the result of disparate treatment. "It is insufficient for a plaintiff alleging discrimination under the disparate treatment theory to show the [defendant] was merely aware of the adverse consequences the policy would have on a protected group." *Am. Fed'n of State, Cnty., & Mun. Emps. v. Washington*, 770 F.2d 1401, 1405 (9th Cir. 1985). When "challenging a facially neutral policy, there must be a specific allegation of discriminatory intent." *Wood v. San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012). Which is to say, Ms. Earll must plead facts that eBay adopted or retained its policy in order to exclude deaf sellers from eBay.com. *See Koebke*, 115 P.3d at 1229. But none of her three complaints includes a single allegation about eBay's decisionmaking.

To credit Ms. Earll's argument would be to erase the line separating disparate treatment and disparate impact. When the law forbids only disparate treatment, it is perfectly lawful for a defendant to know about or suspect a policy's disparate impact on a protected group and adopt or maintain the policy anyway, "in spite of" its impact. *Iqbal*, 556 U.S. at 676–77 (quoting *Personnel Administrator*

47

*of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). A facially neutral policy is discriminatory only if adopted "because of" its disparate impact. *Id.* From the defendant's mere knowledge of a policy's effects, a court cannot reasonably infer whether the defendant adopted the policy "because of" or "in spite of" its effects. *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (a plaintiff must plead facts "plausibly suggesting" a violation, not facts "merely consistent" with one). Thus, disparate treatment cannot be inferred solely from allegations that a defendant retained a policy, without making an exception to it, after learning of its disparate impact. *See Koebke*, 115 P.3d at 1215 (noting that the defendant had rejected requests to change its policy).

Ms. Earll's allegations fail to make out a plausible claim of intentional discrimination for a host of other reasons. Her allegations that eBay did not change its policy after she sued lack factual basis; her brief cites only conclusory allegations asking for prospective injunctive relief. *See* Earll Br. 40 (citing ER 14, 37, 64). The same goes for her allegations that alternative measures were "readily available." A single website's use of the purported alternative says nothing about its availability, and Ms. Earll never attempted to quantify the costs or benefits of the alternative. *See* ER 55–56; *see also id.* at 20 (district court opinion rejecting as conclusory her allegation that alternatives were "easy and inexpensive"). That

48

failure belies her appellate argument that making an exception for her or adopting the alternative is a no-brainer. *See* Earll Br. 39.

Ms. Earll notes that she has not been verified even after meeting in person with eBay's counsel in July 2010—after filing this suit—as if that were evidence of eBay's discriminatory intent. *See* Earll Br. 40, 43. As the district court recognized, it is not. *See* ER 71–73. In any case, Ms. Earll failed to allege that she tried to register after the meeting. The last date she allegedly tried to register was December 2009. *See id.* at 55.

Ms. Earll fixates on this Court's decision in *Moss*, spinning it as favorable to her position here. *See* Earll Br. 37–39. It is not. Like Ms. Earll, the *Moss* plaintiffs (protestors at a presidential campaign event) tried to allege disparate treatment, though on account of their speech rather than their membership in a protected class. They pleaded that the *Moss* defendants (Secret Service agents) relocated them away from the campaign event, though no farther away than other demonstrators. So, while the defendants might have had an improper motive, a proper motive (compliance with a uniform policy) could not be ruled out. *See Moss*, 572 F.3d at 970–72.

The situation here is no different. Ms. Earll pleaded that she could not register as a seller on eBay.com because eBay adopted and implemented a facially neutral and uniform seller-registration policy and made no exceptions to it. That

allegation provides no basis to conclude that eBay acted with an intent to discriminate against individuals with disabilities. Ms. Earll tries to portray the policy itself as irrational because, to the extent it excludes sellers who cannot respond to a telephone call, it arguably undermines eBay's profit-maximization goals. *See* Earll Br. 39, 41. A policy aimed at verifying potential sellers on eBay.com has an obvious rational, nondiscriminatory basis harmonious with maximizing profits—fraud prevention—and none of Ms. Earll's allegations suggest otherwise. The district court was therefore right to dismiss her Unruh Act claim.

## CONCLUSION

The judgment of the district court should be affirmed.

Respectfully submitted,

Dated: July 8, 2013

/s/ David B. Salmons
David B. Salmons
Bryan M. Killian
BINGHAM McCUTCHEN LLP
2020 K Street NW
Washington, DC 20006
(202) 373-6000

*Counsel for Appellee eBay Inc.*

## CERTIFICATE OF COMPLIANCE

    1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

      __X__ this brief contains <u>12,173</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

      _____ this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

    2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

      __X__ this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in 14 Point Times Roman*, or*

      _____ this brief has been prepared in a monospaced typeface using *[state name and version of word processing program]* with *[state number of characters per inch and name of type style].*

                     /s/ Bryan M. Killian_____
                     Bryan M. Killian

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 8th day of July 2013, I electronically filed with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit a copy of the foregoing Brief of Appellee eBay Inc. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.


/s/ Bryan M. Killian
Bryan M. Killian

## <u>STATEMENT OF RELATED CASES</u>

In accordance with Circuit Rule 28-2.6, counsel for eBay Inc. state that they know of no pending cases related to this one.

/s/ Bryan M. Killian
Bryan M. Killian